**Lawrence Preston MILES, Appellant**

**v.**

**The STATE of Texas.**

**Nos. PD–1019–06, PD–1047–06.**

Court of Criminal Appeals of Texas.

Oct. 17, 2007.

Rehearing Denied Dec. 12, 2007.

Keith s. Hampton, Austin, for Appellant.

Bridget Holloway, Asst. D.A., Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which MEYERS, WOMACK, KEASLER, HERVEY and HOLCOMB, JJ., joined.

A tow-truck driver made a citizen's arrest of appellant for DWI after pursuing him through busy Houston streets late one night. Appellant was then charged with DWI and unlawfully carrying a weapon. He filed a motion to suppress under Article 38.23, the Texas exclusionary statute,[1] and claimed that evidence obtained as a result of this citizen's arrest should have been excluded because the tow-truck driver violated traffic laws when he pursued appellant. After the trial court denied the motion to suppress, appellant pleaded guilty and appealed the trial court's suppression ruling. The court of appeals affirmed the trial court's ruling. It concluded that laws regulating the flow of traffic do not fall within the category of "laws" implicated by Article 38.23 because those laws do not exist to regulate the acquisition of evidence to be used in a criminal

---

1. TEX.CODE CRIM. PROC. art. 38.23(a).

case.[2] We granted review,[3] and we affirm the court of appeals.

## I.

The evidence showed that Edward James, a limousine driver, was stopped at the corner of Westheimer and Loop 610 at 1:45 a.m., waiting for the light to change. Suddenly a purple Corvette ran into the car behind Mr. James, veered toward the curb, and finally "jagged" back to the left hitting the limousine. The Corvette ended up underneath the rear bumper of Mr. James's limousine. Appellant was driving the Corvette.

Mr. James and a couple of his clients, professional football players, got out of the limousine to inspect the damage. The football players said that appellant was drunk, and then they got back into the car. Mr. James asked appellant for his driver's license and proof of insurance. He noticed that appellant had alcohol on his breath, his speech was "blurry," his eyes were "wiggling" and red, his balance was unsteady, and "he was backing up and holding onto his car, propping himself up onto his car." Mr. James concluded that appellant was drunk. Appellant and Mr. James exchanged driver's license information, but appellant never gave Mr. James his insurance documentation. Mr. James asked him to wait until the police arrived, but after waiting for a while, appellant became very nervous. He said, "I'm going to have to go, I've got to go." Appellant got into his car and backed it up, tearing out part of the limousine's back bumper. Mr. James said that appellant ran the red light as he drove west down Westheimer at a high rate of speed.

Meanwhile, several tow-truck drivers had arrived at the accident scene. Joseph Moore was one of them. He noticed that the damage to the three cars wasn't too bad; they could all still be driven. He thought that the parties could resolve the accident without the need for police assistance. But there was a problem because appellant did not have the required insurance information. Appellant "was reluctant to cooperate and he seemed agitated at the fact that the limo driver wanted him to stay until the police arrived[.] [H]e wanted to leave and he seemed really testy about the limo driver pressing him for the information that he needed." Appellant appeared to be under the influence of something. "His speech was slurred. He was fumbling. He was agitated.... He didn't seem coordinated." Mr. Moore did not think it was safe for appellant to leave the scene, so he "made the decision based on public safety and his mannerisms that something needed to be done in an effort to try to stop him from harming anyone else or himself." Mr. Moore was especially concerned because he didn't think that appellant "ever looked to find out if any other traffic was coming" when he left the accident scene.

Mr. Moore and about five other wrecker drivers followed appellant in their trucks because they were "really uncomfortable with the fact that he was driving and at that time of night there was a lot of people on the road and [they] felt like he was a danger to himself and other people." They tried to stop him near the corner of Post Oak and Westheimer, but appellant put his Corvette into reverse, backed up, drove partially up on the curb and went

---

2. *Miles v. State,* 194 S.W.3d 523, 528 (Tex. App.-Houston [1st Dist.] 2006).

3. We granted appellant's sole ground for review:

The court of appeals erred by holding that article 38.23 does not exclude evidence obtained through the violation of traffic laws.

around them. He then "whipped" into a parking lot and crossed it at 30 to 40 miles an hour, came back out onto the road, "never hit[ ] his brakes, almost side-swipe[d] a car and proceed[ed] westbound on Westheimer."

Mr. Moore followed as appellant took two left turns and went the wrong way down West Alabama into oncoming traffic. His driving was "[v]ery dangerous," so Mr. Moore followed with his "overhead lights on to alert people that we are coming the wrong way." Mr. Moore knew that he was taking a chance going down a one-way street, but "[m]y motive is public safety." Then appellant drove west in the east-bound lanes head-on into heavy traffic on Westheimer, so Mr. Moore crossed over the median and followed, going the right way. Appellant "whip[ped]" into a bar parking lot going "maybe 50 m.p.h." Mr. Moore followed, along with other wrecker drivers who had caught up. They "cor-ralled" appellant in the parking lot. Mr. Moore got out and went up to appellant's Corvette, asked him to put the car in park and give up the keys. When appellant told him "to 'F' off," Mr. Moore reached in to take the keys "at which point I felt a cold object to the right temple of my head." It was a handgun. Mr. Moore slid down beside appellant's car and sidled to the rear of the car until the police arrived two or three minutes later.

At the motion to suppress hearing, the trial judge asked appellant to specify his legal issue,[4] and defense counsel stated,

The sole argument ... is whether the citizen who placed Mr. Miles under ar-rest had probable cause to do so, num-ber one. Whether it violated a law in order to arrest Mr. Miles. Number three, whether a citizen has a right to pursue a person if the citizen believes that that person committed a breach of the peace.

After the trial judge denied the motion, appellant pled guilty and appealed those legal issues.

The court of appeals determined that Mr. Moore did make a citizen's arrest, but that the trial judge did not abuse his dis-cretion in concluding that Mr. Moore had probable cause to arrest appellant for driv-ing while intoxicated.[5] Finally, the court of appeals disagreed with appellant's as-sertion that Article 38.23 compelled the exclusion of any evidence resulting from appellant's arrest because Mr. Moore vio-lated various traffic laws in effecting the arrest. It noted that a violation of law does not always invoke the provisions of Article 38.23 because the primary purpose of that statute "is to deter unlawful actions that violate the rights of criminal sus-pects."[6] Thus, the " 'law which is violated in obtaining evidence must exist for the purpose of regulating the acquisition of evidence to be used in a criminal case.' "[7] Noting that the laws regulating the flow of traffic do not fall into that category, the court then held that Mr. Moore's actions, though perhaps dangerous, did not impli-cate Article 38.23.[8]

---

4. The conscientious trial judge asked clarify-ing questions of the witnesses and requested the parties to explain fully their positions on the legal issues presented. This procedure protected the parties and judge from any ap-pellate misunderstanding about either the pertinent facts or legal issues that were litigat-ed.

5. *Miles,* 194 S.W.3d at 527–28.

6. *Id.* at 528.

7. *Id.* (quoting *Carroll v. State,* 911 S.W.2d 210, 221 (Tex.App.–Austin 1995, no pet.)).

8. *Id.*

## II.

Article 38.23(a), the Texas exclusionary statute, states,

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.[9]

In this case, we must address two specific portions of Article 38.23:(1) whether an "other person" may make a citizen's arrest for the misdemeanor offense of DWI, and (2) whether the statute bars evidence obtained by an "other person" if that person violates traffic "laws of the State of Texas" in the process of making a citizen's arrest.

The plain language of Article 38.23, like that of the Fourth Amendment to the United States Constitution, appears to be relatively straightforward. But, like the Fourth Amendment, its meaning and application are not always so simple. Scores of Supreme Court decisions have explained the contours of constitutional search-and-seizure law and the exclusionary rule that enforces its prohibitions. Thousands of federal and state cases have done the same. A six-volume treatise on the Fourth Amendment expands each year as courts and commentators continue to construe the purportedly plain-language meaning of this short constitutional provision.[10] Although the Texas exclusionary statute has not received anywhere near the judicial or academic attention that the Fourth Amendment has attracted, it, too, is considerably more complex in application than its simple words suggest.[11]

In many respects, the Texas exclusionary rule mirrors the federal one. But Article 38.23(a), unlike the Fourth Amendment, applies to certain actions by private individuals as well as those by government officers. To understand which actions and

---

9. Tex.Code Crim. Proc. art. 38.23(a).

10. Wayne R. LaFave, Search and Seizure (4 ed.2004).

11. This Court has been criticized for failing to provide much guidance in the underlying purpose or interpretation of that statute. Over twenty-five years ago, Professor Robert O. Dawson lamented:

> After fifty-five years, the meaning of article 38.23 remains a mystery. We may divine some shadowy outlines of its scope only from the bits and pieces of opinions that occasionally address quite narrow issues under the statute. Nowhere, however, does the Texas Court of Criminal Appeals favor us with a discussion of what its philosophy will be for adjudications under the statute and thereby provide the interpretive guideposts that we need so badly. Until it does, we must squint and grope.

Robert O. Dawson, *State–Created Exclusionary Rules in Search and Seizure: A Study of the Texas Experience*, 59 Tex. L.Rev. 191, 253 (1981) (hereafter cited as Dawson); *see also* Matthew W. Paul, *Surmounting the Thorns of Article 38.23: A Proposed Interpretive Guideline for the Texas Statutory Exclusionary Rule*, 46 Baylor L.Rev. 309, 352–53 (1994) (urging Texas courts to "discard the simplistic notion that all outstanding issues which arise under the statute may easily be resolved merely by application of the plain language of Article 38.23, without consideration of policy or the purpose of the statutory exclusionary rule," and noting, "[I]f interpretive guidelines are to be established, Texas courts must concentrate on interpreting the flexible statutory language in light of the statute's history and purpose."); Nathan L. Mechler, *Comment: Texas's Statutory Exclusionary Rule: Analyzing the Inadequacies of the Current Application of "Other Person[s]" Pursuant to Article 38.23(a) of the Texas Code of Criminal Procedure*, 36 St. Mary's L.J. 195, 235–36 (2004) (noting that the Texas exclusionary rule "is still unclear and its interpretation has been the topic of numerous debates, despite its lengthy existence.... Article 38.23 will continue to be debated because its results are unsatisfactory.").

why, we examine the historical context in which Article 38.23 was enacted.

## A. The History of the Texas Exclusionary Statute.

In 1922, the Court of Criminal Appeals decided *Welchek v. State.*[12] In that Prohibition-era case, a sheriff and "a number of other gentlemen" had "been waiting and looking for" the defendant to drive down the road. When they saw him approach, they stopped his car and seized three one-gallon jugs of whiskey from it even though they did not have a warrant.[13] This confiscation was, according to the Court, a common scenario and the "question of search and seizure is now being raised in nearly all liquor cases tried in this State[.]"[14] The Court rejected the argument that the search-and-seizure provision of the Texas Constitution contained an implicit exclusionary rule.[15] It specifically rejected the

reasoning of those United States Supreme Court cases that had imposed an exclusionary rule on federal courts under the Fourth Amendment.[16] The Court rested its decision both on its reasoning that the Texas Constitution did not expressly or implicitly contain any such exclusionary rule and on its view of sound public policy.[17]

The Texas Legislature obviously disagreed with this Court's reasoning in *Welchek*. In "an ambitious effort to undo *Welchek*,"[18] the 1925 Legislature enacted Senate Bill 115, which stated, "No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."[19] Senate Bill 115 was codified as Article

**12.** 93 Tex.Crim. 271, 247 S.W. 524 (1922).

**13.** *Id.* at 274, 247 S.W. at 526.

**14.** *Id.* This Court noted that the "importance of the matter presented for discussion and the fact, as above stated, that the question is being so universally raised appears to call for a rather extended discussion and announcement by this court[.]" *Id.* at 275, 247 S.W. at 526.

**15.** 93 Tex.Crim. at 280–81, 247 S.W. at 529. The Court reasoned that the Texas Constitution demanded only that one whose property was unlawfully seized had a right to sue for return of the property and for punishment of the trespasser. *Id.* at 280, 247 S.W. at 528.

**16.** *Id.* at 275, 247 S.W. at 526. The Court refused to follow *Amos v. United States*, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921), a case that, like *Welchek*, involved the seizure of liquor because "the opinion in said case rests upon a misapprehension of the purpose of the Fourth Amendment to the Federal Constitution, which is substantially the same as Section 9, Article I of our State Constitution[.]" *Id.*

**17.** *Id.* at 280–81, 247 S.W. at 528–29. In response to the defendant's argument that exclusion of unlawfully obtained evidence is necessary to punish those who make an illegal seizure, this Court stated:

> [t]o reject such evidence for such reason ... would in nowise be a punishment to the officer but would rather be a hurt inflicted upon the people whose interest in the punishment of crime suffers because the court may think the officer should be rebuked for the manner in which he obtained the evidence.

*Id.* at 280, 247 S.W. at 529.

**18.** *See* Dawson, at 196.

**19.** S.B. 115, 1925 Tex. Gen. Laws, ch. 49, 186–87. The Legislature also passed Senate Bill 174 which made a warrantless search a criminal offense. S.B. 174, 1925 Tex. Gen. Laws, ch. 149, 357–58. However, in 1929, the Legislature repealed this provision because it had " 'the effect of retarding and hindering the enforcement of the Criminal laws of this State, and of hampering and embarrassing the Peace Officers of the State in the faithful execution of the laws.' " Dawson, at 200.

727a of the 1925 Code of Criminal Procedure, and, between 1926 and 1928, this Court reversed at least thirty-four convictions based upon the new statutory exclusionary rule.[20] Thirty-two of those cases were prohibition liquor cases.[21]

In applying this exclusionary rule, we stated that "[t]he manifest purpose" of Article 727a "was to reverse the rule applied by this court in the *Welchek* case[.]"[22] The Legislature thus "sanctioned the construction by the Federal courts of the search-and-seizure clause of the [federal] Constitution."[23] But if the legislative purpose of Article 727a was to enact a Texas exclusionary rule just like the federal rule, why did the statute bar evidence illegally obtained by any "other person" as well as by law enforcement officers? Surely the 1925 Legislature knew that, in 1921, the Supreme Court had explicitly held that the federal exclusionary rule applied only to government actors, not private individuals.[24]

The Texas Legislature enacted an exclusionary rule broader than its federal counterpart[25] precisely because of the *Welchek* scenario and the "widespread problem of vigilante-type private citizens [acting] in concert with the police conducting illegal

20. Dawson, at 199.

21. *Id.*

22. *Chapin v. State*, 107 Tex.Crim. 477, 484–86, 296 S.W. 1095, 1099–1100 (1927) (noting that by passing Article 727a, "the Legislature indicated the desire to disapprove the refusal of this court to follow the Federal courts in the holding by this court that evidence obtained through an illegal search could be used in a criminal trial"); *see also Craft v. State*, 107 Tex.Crim. 130, 132, 295 S.W. 617, 618 (1927) (noting that when the Legislature passed Article 727a prohibiting the admission of evidence illegally obtained, "it is believed that the courts of this state by such enactment were required to make the same application of the principle involved as had theretofore been made by the Supreme Court of the United States, and by the courts of other jurisdictions in excluding evidence obtained in violation of the constitutional provisions"); *Odenthal v. State*, 106 Tex.Crim. 1, 13, 290 S.W. 743, 748 (1927) (recognizing that Article 727a was intended to overrule *Welchek*); *Brick v. State*, 738 S.W.2d 676, 679 n. 5 (Tex. Crim.App.1987) (noting that Article 38.23 and the federal exclusionary rule share a common purpose: "to deter unlawful conduct on the part of law enforcement personnel and to close the doors of our courts to illegally obtained evidence").

23. *Chapin*, 107 Tex.Crim. at 484, 296 S.W. at 1100; *see also Chavez v. State*, 9 S.W.3d 817, 822 (Tex.Crim.App.2000) (Price, J., concurring) ("[I]t is virtually irrefutable that the Texas Legislature enacted 727a, which is materially identical to today's Article 38.23, in order to provide Texas citizens with the protections of the Fourth Amendment's exclusionary rule.").

24. *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) ("The Fourth Amendment gives protection against unlawful searches and seizures, and ... its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority[.]"); *see also Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (wrongful seizures by private individuals do not invoke the Fourth Amendment or its exclusionary rule and thus such illegally obtained evidence is admissible in criminal proceedings); *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (state action is required before Fourth Amendment is implicated).

25. *See* C. McCormick & R. Ray, 1 Texas Law of Evidence, § 473 (2d ed. 1956) ("The Texas [exclusionary] statute lays down a rule far broader than that existing in any other state and goes much beyond the doctrine of the *Boyd* and *Weeks* cases. In the first place, while the federal rule excludes only evidence illegally obtained by federal officers, and those cooperating with them, the Texas statute makes a clean sweep and excludes evidence thus obtained by anyone.").

searches for whiskey." [26] Long before national Prohibition laws were enacted, Texas had created its own local-option liquor and prohibition laws.[27] Enforcement of these local-option laws led to the formation of various citizen groups, including the "Law and Order League," whose members pledged to aid officers to enforce the laws, especially local-option laws, and to " 'clean up' their town and county of crime[.]" [28] Presumably, the Legislature foresaw that, if the exclusionary rule applied only to government officials or their agents, these "Law and Order League" members might well continue their illegal search-and-seizure operations without the participation or supervision of police officers.[29] Then

these vigilante members would hand over the illegally seized evidence, on a "silver platter," to government officers for use in criminal trials.[30] To avoid the prospect of implicitly encouraging or condoning vigilante action by these citizen groups, the Legislature applied its statutory exclusionary rule to both law-enforcement officers and private persons.[31]

▪ As Presiding Judge McCormick noted in his dissent in *State v. Johnson,* "Deterrence of police illegality is the 'core' rationale for applying the federal exclusionary rule," but that rationale has considerably less force when "private persons acting in a purely private capacity illegally obtain evidence." [32] Presumably, the 1925

26. *State v. Johnson,* 939 S.W.2d 586, 591 (Tex.Crim.App.1996) (McCormick, P.J., dissenting) (citing Charles P. Bubany & Perry J. Cockerell, *Excluding Criminal Evidence Texas–Style: Can Private Searches Poison the Fruit?,* 12 TEX. TECH L.REV. 611 (1981)).

27. *See generally,* 3 VERNON'S ANNOTATED CONSTITUTION OF THE STATE OF TEXAS, A. Thomas & A. Thomas, "Interpretive Commentary," 198, 199 (1955).

28. *Counts v. State,* 78 Tex.Crim. 410, 414, 181 S.W. 723, 725 (1916); *Deadweyler v. State,* 57 Tex.Crim. 63, 66, 121 S.W. 863, 865 (1909) (rejecting defendant's challenge to the array of jurors because some of them were members of a "Law and Order League" that "was organized to see that the law was enforced-not only in local option cases, but in all violations of the law").

29. This Court had mentioned such joint officer-citizen searches and seizures in several early cases. *See, e.g., Bolt v. State,* 112 Tex. Crim. 267, 268, 16 S.W.2d 235, 235 (1929) (noting that "one of the jurors had prior to appellant's trial aided the officers in raiding some parties who had been engaged in violating the liquor laws. One of the parties arrested had been placed in the custody of this juror where he remained until he made bond."); *Stach v. State,* 97 Tex.Crim. 280, 280, 260 S.W. 569, 570 (1924) (justice of the peace and constable looked into defendant's window, saw him pouring whiskey and water into soda bottles, and then took custody of the

bottles); *West v. State,* 93 Tex.Crim. 288, 289, 247 S.W. 534, 535 (1922) (noting that defendant's car, containing 81 bottles of tequila, was stopped by sheriff acting with "another citizen").

30. *See State v. Johnson,* 896 S.W.2d 277, 294 (Tex.App.-Houston [1 st Dist.] 1995) (discussing "silver platter" doctrine in context of Article 38.23), *aff'd,* 939 S.W.2d 586 (Tex.Crim. App.1996).

31. *See Gillett v. State,* 588 S.W.2d 361, 370–71 (Tex.Crim.App.1979) (Roberts, J., dissenting) ("Article 38.23 was enacted at a time when private persons frequently made unreasonable searches and seizures, and it was a specific response to this Court's holding in a case that involved a search in which private persons joined. To give full effect to the statute, we must hold that it applies to evidence obtained through unreasonable searches or seizures that are made by officers or other persons alike.").

32. *See State v. Johnson,* 939 S.W.2d 586, 590 (Tex.Crim.App.1996) (McCormick, P. J., dissenting); *see also* Paul G. Reiter, Annotation, *Admissibility, In Criminal Case, of Evidence Obtained by Search by Private Individual,* 36 A.L.R.3d 553, 558 (1971) (noting that courts have generally held that the exclusionary rules, "although clearly appropriate as a means to deter improper conduct by law enforcement officers because the police will al-

Legislature believed that this deterrence rationale operated with considerably greater force during the era of the "Law and Order Leagues." Until the Legislature itself decides that the type of vigilante action prevalent during the early Prohibition era is no longer a threat to the privacy interests of Texas citizens, we are bound to follow both the plain language and the manifest legislative intent of the original Article 727a (recodified almost verbatim as Article 38.23(a)). The Texas exclusionary rule applies to illegal searches or seizures conducted by law enforcement officers or "other persons," even when those other persons are not acting in conjunction with, or at the request of, government officials.

Thus, the plain language and history of Article 38.23 lead to an inescapable conclusion: if an officer violates a person's privacy rights by his illegal conduct making the fruits of his search or seizure inadmissible in a criminal proceeding under Article 38.23,[33] that same illegal conduct undertaken by an "other person" is also subject to the Texas exclusionary rule. If the police cannot search or seize, then neither can the private citizen. Conversely, if an officer may search or seize someone under the particular circumstances, then the private citizen's equivalent conduct does not independently invoke the Texas exclusionary rule, and the evidence obtained by either the officer or the private person may be admissible.

## B. Searches and Seizures Conducted by "Other Persons."

Few Texas cases have discussed the types of searches and seizures conducted by private citizens that are illegal for purposes of the Texas exclusionary rule.[34] In

ter their investigatory practices to secure future convictions, would arguably not function as a deterrent to lawless private searches, since the private individual, usually unaware of an exclusionary rule and motivated by reasons apart from, or in addition to, a desire to assist in securing a criminal conviction, would be under no disciplinary compulsion to obey it.").

33. Only those acts which violate a person's privacy rights or property interests are subject to the state or federal exclusionary rule. *See, e.g., Chavez v. State*, 9 S.W.3d 817, 822–23 (Tex.Crim.App.2000) (Price, J., concurring). Judge Price, in his concurring opinion in *Chavez*, quoted Professors Dix and Dawson in reaching the conclusion that

Article 38.23 does expand the Fourth Amendment exclusionary rule in that private citizens, not simply government actors, are estopped from illegally obtaining evidence against a defendant. But the underlying theory of both the exclusionary rule and article 38.23 is the same: to protect a suspect's liberty interests against the overzealousness of others in obtaining evidence to use against them. Thus, unless someone's privacy or property interests are illegally infringed upon in the obtainment of evidence, the core rationale for providing this prophylactic measure is not met and its use is unwarranted. To expand the breadth of 38.23 to any and every violation of Texas "law"—beyond those that affect a defendant's privacy or property interests—is to ignore the basic premise under which the statute was created and would lead to absurd results.

*Id.* at 822–23 (citation omitted); *see also Roy v. State*, 608 S.W.2d 645, 651 (Tex.Crim.App. 1980) (reasoning that the primary purpose of Article 38.23 is to deter unlawful actions which violate the rights of criminal suspects; when the purpose of the statute that is violated is unrelated to the rights of a criminal suspect—like the assumed named statute here—the evidence is not obtained in violation of a law within the meaning of Article 38.23); *Pannell v. State*, 666 S.W.2d 96, 97 (Tex.Crim.App.1984) (holding that a Disciplinary Rule of the Code of Professional Responsibility is not the type of law referred to in Article 38.23 because violations of these rules are dealt with by means of administrative mechanisms).

34. As noted above, numerous cases decided immediately after the enactment of Article 727a (the forerunner of present Article 38.23(a)), had held that the exclusionary rule

*Gillett v. State,*[35] this Court declined to address whether the search of a dressing room by a Foley's Department Store security officer constituted an illegal search by a private person. Instead a majority of the Court held that the defendant did not have an objectively reasonable expectation of privacy in the dressing room because signs were posted saying that the dressing rooms were monitored.[36] Thus, evidence obtained from such a search, whether undertaken by an officer or a private security guard, was not barred by the Texas exclusionary rule.

In *Stone v. State,*[37] this Court stated that a babysitter, taking care of the defendant's children, had permission to return to the defendant's home to retrieve diapers and other baby supplies when she saw a stack of photographs on the bedroom dresser and looked through them.[38] The photographs depicted the defendant and his wife having oral sex with a neighborhood child. The babysitter took the photographs to the apartment manager who then gave them to the police. This Court held that the babysitter did not commit theft when she took the pictures because she had no "intent to deprive" the owner of his property.[39] Thus, she committed no illegal act in seizing the photographs and turning them over to the police.[40] Although this Court did not mention it, an alternate rationale for its holding might be that if a law enforcement officer had been standing in the shoes of the babysitter who was legitimately in the bedroom, he could have seized these photographs if they were in plain view and clearly depicted sexual

---

applied to joint officer-citizen illegal searches and seizures, but few cases involving purely private-citizen actions have reached this Court. *See Gillett v. State,* 588 S.W.2d 361, 370 (Tex.Crim.App.1979) (Roberts, J., dissenting) ("The question of the applicability of this statute [art. 38.23(a)] to the acts of private persons has not been discussed by this Court[.]"). In *Crowell v. State,* 147 Tex.Crim. 299, 180 S.W.2d 343 (1944), this Court discussed the purported unlawful conduct of both a private citizen and officers who repeated the private citizen's conduct. In *Crowell,* the defendant was prosecuted for keeping a bawdy house in the tiny town of La Tuna. He argued that the testimony of a citizen who had peered into the back window while walking through his yard should have been excluded under the Federal exclusionary rule and Article 38.23 because the citizen was trespassing at the time. *Id.* at 302, 180 S.W.2d at 343. For the same reason, the defendant claimed that the testimony of two officers—who, when told by the citizen of what he had seen, also peeked into the same window from the same vantage point—should have been excluded. *Id.* at 302, 180 S.W.2d at 345. All three—two officers and one citizen—either conducted illegal searches or none of them did. First, the Court relied upon *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); and *Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), in concluding that the observations of both the citizen and the two officers were not a "search" under the Fourth Amendment. 147 Tex.Crim. at 305, 180 S.W.2d at 347. Second, the Court rejected the defendant's claim that the three had obtained evidence in violation of Article 38.23 because that statute "has application to the violation of laws of this State, and there is no statute making it an offense merely to go upon the premises or property of another." *Id.* In *Crowell,* then, neither the officers nor the citizen violated a statutory "law," and their conduct was not illegal under Article 38.23.

35. 588 S.W.2d 361 (Tex.Crim.App.1979).

36. *Id.* at 362–63. The dissent argued that this search was, in fact, unlawful under Article 38.23. *Id.* at 370–71 (Roberts, J., dissenting).

37. 574 S.W.2d 85 (Tex.Crim.App.1978) (panel op.).

38. *Id.* at 87.

39. *Id.* at 88–89.

40. *Id.*

assault of a child.[41] Had the search and seizure been made by an officer, the fruits of a "plain view" seizure would not be excluded under Article 38.23(a). Thus, the fruits of the babysitter's seizure would not be excluded under the rule.

Similarly, in *Cobb v. State*,[42] this Court held that five knives that the defendant's father took from the defendant's apartment were not inadmissible under Article 38.23. The father was legitimately in the apartment at the request of the defendant's live-in girlfriend to retrieve her car keys and he took the knives, not with the intent to steal them, but to give them to the police.[43] The defendant's father thought that the knives were connected to the capital murder investigation of his son.[44] Thus, he did not take the knives with the "intent to deprive" the owner (his son and his son's girlfriend) of them. In *Cobb*, as in *Stone*, the Court could have analyzed the issue according to the original rationale of Article 38.23.[45] Had a police officer been requested to enter the defendant's apartment to retrieve the car keys and had that officer seen the knives in plain view on the kitchen counter, he could have seized them if he immediately recognized them as incriminating evidence in the capital murder investigation.[46] If the officer's seizure under Article 38.23 would not be unlawful, then the citizen's seizure would not be unlawful.

Conversely, in *State v. Johnson*,[47] this Court held that evidence seized by the decedent's sons who purportedly "burglarized" the funeral home jointly operated by the defendant and the decedent was inadmissible under Article 38.23. Neither they

---

**41.** At the time *Stone* was delivered, the Supreme Court had not yet held that a police officer is forbidden to make a "cursory inspection" of materials that are themselves in plain view to determine whether they are evidence of crime. *See Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). At the time of the *Stone* appeal, Texas apparently followed an "open view" rule which, like the contemporaneous holdings of the Fifth Circuit, did not prohibit officers from a cursory examination of materials to determine their significance. *See United States v. Roberts*, 619 F.2d 379, 381 ("Police are not required to ignore the significance of items in plain view even when the full import of the objects cannot be positively ascertained without some examination."); *Clark v. State*, 548 S.W.2d 888, 890 (Tex.Crim.App.1977) (police officer was legitimately in defendant's bedroom when he saw an open box beside the closet containing several magazines which depicted nude boys; the magazines were "in open view" and "were not seized as the result of a routine search of the area").

**42.** 85 S.W.3d 258 (Tex.Crim.App.2002).

**43.** *Id.* at 271; *see also Bodde v. State*, 568 S.W.2d 344, 352–53 (Tex.Crim.App.1978) (en banc) (upholding admission of evidence seized by defendant's landlady from defendant's apartment after he had been arrested; "Since she was rightfully on the premises, whatever incriminating facts or circumstances were discovered by her were admissible.").

**44.** *Id.*

**45.** *Id.* at 588.

**46.** *See Texas v. Brown*, 460 U.S. 730, 738–39, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (stating that the "plain view" doctrine is not really an "exception" to the warrant requirement because the " 'seizure of property in plain view involves no invasion of privacy and is presumptively reasonable' "); *see also Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (stating that if an item is already in plain view, neither its observation nor its seizure involves any invasion of privacy under the Fourth Amendment); *New York v. Class*, 475 U.S. 106, 112, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) ("[T]he State's intrusion into a particular area cannot result in a Fourth Amendment violation unless the area is one in which there is a constitutionally protected reasonable expectation of privacy.").

**47.** 939 S.W.2d 586 (Tex.Crim.App.1996).

nor police officers had permission to enter the funeral home. Thus, neither an officer nor the citizens were legitimately in the funeral home, and neither could make a warrantless seizure of those items. What the police could not do, the decedent's sons could not do either.[48] Similarly, in *Jenschke v. State*,[49] we held that the parents of a child (who had said that the defendant sexually assaulted her) acted illegally when they broke into the defendant's truck and took a used condom from inside it without the intent to immediately turn it over to the police. An officer, standing in the parents' shoes, could not have entered the defendant's garage, found the key to the truck, unlocked it, and made a warrantless search of that truck without permission or other exigent circumstances. Thus, neither could the citizens.[50]

None of these cases was explained on this basis, but this rule—that a private person can do what a police officer standing in his shoes can legitimately do, but cannot do what a police officer cannot do—would explain the outcome in each case and is consistent with the purpose of Article 38.23.[51] We conclude that the histori-cal rationale for including unlawful conduct by an "other person" under the Texas exclusionary statute is best explained and implemented by this rule.

## C. Texas Law Allows a Citizen's Arrest for DWI.

Article 38.23 is not the only statute governing the conduct of citizens in the search-and-seizure arena. Under Texas law, neither officers nor citizens have an unfettered right to arrest a person. They may do so only under limited, statutorily-authorized, circumstances set out in Chapter 14 of the Code of Criminal Procedure. Article 14.01(a) provides:

> A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.[52]

Article 14.01(b) provides that peace officers may arrest an offender without a warrant "for any offense committed in his presence or within his view."[53] Thus, a peace officer may arrest offenders for any

---

48. *Id.* at 587 (noting that Article 38.23 "has always been thought to mean what it says—that is, to include everybody within the scope of its exclusionary sanction").

49. 147 S.W.3d 398 (Tex.Crim.App.2004).

50. *See Gillett v. State*, 588 S.W.2d 361, 370 (Tex.Crim.App.1979) (Roberts, J., dissenting) ("To give full effect to [Article 38.23], we must hold that it applies to evidence obtained through unreasonable searches and seizures that are made by officers or other persons alike").

51. One might argue that this interpretation of Article 38.23(a) could conceivably *increase* vigilantism rather than *decrease* it as was intended by the 1925 Legislature. This has not been the American experience. As noted above, the Fourth Amendment has never applied to the conduct of private citizens, and we are unaware of any other state that applies its exclusionary rule equally to the conduct of private citizens and to that of law enforcement officers. There is no evidence that these states have experienced an increase in vigilantism as a result of their laws that decline to exclude the fruits of private illegal searches. Texas, faced with a unique "Law and Order" League vigilante problem in the early years of the twentieth century, addressed this problem by specifically applying its exclusionary rule—whatever it may be—to both law enforcement and private citizens. Equally. There has never been any suggestion in Texas law or our cases that the Texas exclusionary rule should be applied more strenuously to the conduct of private citizens than it applies to that of law enforcement.

52. Tex.Code Crim. Proc. art. 14.01(a).

53. Tex.Code Crim. Proc. art. 14.01(b).

misdemeanor committed within his view as well as any such felony, while citizens may arrest only for a felony or a misdemeanor that is "an offense against the public peace." [54]

Professor Dawson has noted, "In one sense, of course, all criminal violations are offenses against the public peace." [55] Such a broad interpretation of "public peace" would make Article 14.01(a) unnecessary. Under that broad interpretation, both officers and citizens would be able to arrest for any offense committed within their view or presence, but Article 14.01(b) explicitly limits such a right to peace officers. As Professor Dawson explains, Texas courts have developed two independent lines of cases interpreting what constitutes "offenses against the public peace" under Article 14.01(a).[56] First, some cases have held that only those misdemeanor offenses listed in Title 9 of the 1925 Penal Code are "offenses against the public peace" under the citizen-arrest statute.[57] Second, some cases have equated "offense against the public peace" with "breach of the peace." [58] Under this second line of cases, a valid citizen's arrest for a misdemeanor required "some showing of actual or threatened violence." [59] In *Woods v. State*,[60] we

quoted Corpus Juris which explained that the term "breach of the peace" included

all violations of the public peace or order, or decorum; ... a disturbance of the public tranquillity by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet of the community.... Actual or threatened violence is an essential element of a breach of the peace.[61]

We then concluded that whether a specific act constituted a breach of the peace depended upon the surrounding facts and circumstances in the particular case.[62] In *Woods*, we held that the defendant did not have a right to arrest the deceased who had assaulted the defendant's wife because the deceased had already completed the assault and had left the scene.[63] "There was nothing to suggest that the breach of the peace might be renewed or continued or that appellant's pursuit of deceased was to prevent a renewal of the offense." [64] Thus, in *Woods*, we reaffirmed our earlier rule of law:

**54.** Any person (an officer or a citizen), may prevent the consequences of theft by seizing stolen items and taking them and the suspected thief to a peace officer without delay. Tex. Code Crim. Proc. art. 18.16. This statute codifies a type of exigent circumstance—the supposed thief must be detained or will likely escape, along with the property stolen, if swift action is not taken.

**55.** Dawson, at 228.

**56.** *Id.*

**57.** Title 9 included offenses such as disorderly conduct, public intoxication, operating a motorboat without a muffler, drinking liquor on a train, horse racing on a road or street, abusive language, or littering in a parking area. All of these provisions were repealed in

the 1974 Penal Code and many have no current counterpart. *Id.* & n. 240.

**58.** *Id.* at 229.

**59.** *Id.*

**60.** 152 Tex.Crim. 338, 213 S.W.2d 685 (1948).

**61.** *Woods, Id.* at 341, 213 S.W.2d at 687 (quoting *Head v. State*, 131 Tex.Crim. 96, 99, 96 S.W.2d 981, 982 (1936), which quoted 9 Corpus Juris, at 386–88).

**62.** *Id.* at 341, 213 S.W.2d at 687.

**63.** *Id.* at 344, 213 S.W.2d at 688–89.

**64.** *Id.* at 344, 213 S.W.2d at 689.

the right of a private individual to arrest without warrant for a breach of the peace, committed in his presence or view, is limited to the time the offense is committed or while there is continuing danger of its renewal, and does not include the right to pursue and arrest for the purpose of insuring the apprehension or future trial of the offender.[65] We have also indicated that some crimes are, by their very nature, offenses against the public peace. These include public drunkenness [66] and driving while intoxicated.[67] But, as Judge Davidson noted in his dissent in *McEathron v. State*,[68] this may be too broad a position.[69] One can imagine a scenario in which a person, though intoxicated, poses no threat to the public peace

at the time that an officer or private citizen makes a warrantless arrest.

The statutory authorization for both officers and citizens to arrest for an "offense against the public peace" codifies an "exigent circumstances" exception to the warrant requirement. This exception to the warrant requirement is like that set out in Article 18.16 which allows "any person"—officer or citizen—to make a warrantless arrest to prevent the consequences of theft—the escape of the thief and the disappearance of the property stolen.[70] Similarly, under Article 14.04, an officer may make a warrantless arrest when he has "satisfactory proof" to believe that a person has committed a felony offense and is

**65.** *Id.* at 343–44, 213 S.W.2d at 688; *see also Irvin v. State*, 563 S.W.2d 920, 923–24 (Tex. Crim.App.1978) (when record did not reflect "that the breach of the peace occurred in the presence or view of the person making the arrest as required by Art. 14.01(a)," citizen arrest was illegal).

**66.** *Heck v. State*, 507 S.W.2d 737, 740 (Tex. Crim.App.1974) ("Being drunk in a public place is a breach of the peace.").

**67.** *Romo v. State*, 577 S.W.2d 251, 252–53 (Tex.Crim.App.1979); *McEathron v. State*, 163 Tex.Crim. 619, 621, 294 S.W.2d 822, 823 (1956).

**68.** 163 Tex.Crim. 619, 294 S.W.2d 822 (1956).

**69.** Judge Davidson argued,

The right of a private citizen to arrest his neighbor is therefore expressly limited by the legislature of this state to two classes of offenses: those classed as felonies and those classed as breaches of the peace. Nowhere does that statute, in so many words, authorize a private citizen to arrest his neighbor when he finds him in a public place and concludes that he is drunk and under the influence of intoxicating liquor— and this, without the neighbor being, in fact, in such condition.

*Id.* at 623, 294 S.W.2d at 824 (Davidson, J., dissenting). Judge Davidson noted that, prior

to 1951, this Court had held that a private citizen could not arrest another for public drunkenness because it was not an offense "against the public peace." *Id.* at 623, 294 S.W.2d at 825. "The unlawful act of being drunk in a public place has reference solely and alone to the condition or state in which the offender is found. To be guilty it is not necessary that he utter a word, or do or perform any act with any intent or purpose. Intent, or manner, is in no particular an ingredient of that offense." *Id.* at 626, 294 S.W.2d at 826–27. One could be peaceably drunk in a public place without creating any threat of violence, disturbance, or breach of the public peace. But if a person is drunk in public and the evidence shows that he currently poses a risk of violence or harm to himself or others, his drunkenness does constitute a breach of the public peace.

**70.** Tex.Code Crim. Proc. art. 18.16; *see Hepworth v. State*, 111 Tex.Crim. 300, 303, 12 S.W.2d 1018, 1019 (Tex.Crim.App.1928) (explaining Article 325 [predecessor to art.18.16]; holding that this statute explicitly permitted warrantless arrests and searches; "It is a wholesome statute designed to give protection from thieves, and we have neither the inclination nor the legal right to nullify its salutary provisions by declaring its operation to be controlled by the terms of the search and seizure law, enacted long after Art. 325 and which neither expressly nor by necessary implication repeals it in our opinion.").

about to escape.[71] In all of these statutes, the Legislature codified a preference for arrests under warrant. But it also recognized that under some circumstances there is no time to procure a warrant. These exigent circumstances require an immediate arrest and include 1) offenses committed in the presence or view of an officer or citizen that pose a continuing threat to the public peace,[72] 2) theft offenses in which the perpetrator may disappear along with the stolen property,[73] and 3) escapes of felony offenders.[74] One might even conclude that the statutory right to make a warrantless arrest under Article 14.03 when the offender is found in a "suspicious place" is yet another codification of the exigent circumstances exception to arrest under warrant.[75]

■ Based on the history and purpose of Article 14.01(a), as well as precedent, we reaffirm the reasoning in *Woods* and conclude that a citizen may make a warrantless arrest of a person who commits a misdemeanor within the citizen's presence or view if the evidence shows that the person's conduct poses a threat of continuing violence or harm to himself or the public. It is the exigency of the situation, not the title of the offense, that gives both officer and citizen statutory authorization to protect the public from an ongoing threat of violence, harm, or danger by making a warrantless arrest.

With this general framework of Article 38.23(a) in mind, we turn to the circumstances in this particular case.

### III.

Appellant claims that (1) Mr. Moore lacked any legal authority to arrest appellant; and (2) even if he did have authority to arrest appellant, the evidence obtained as a result of that arrest was inadmissible because Mr. Moore violated traffic laws in the process of effecting that arrest.

### A. Mr. Moore had authority to arrest appellant under Article 14.01(a).

■ Appellant acknowledges that this Court has previously held that driving while intoxicated is a breach of the peace,[76] but he claims that *Romo* confused "breaches of the peace" with "offenses against the public peace." This is a semantic difference without a legal distinction under Article 14.01(a). The relevant legal issue is whether (1) Mr. Moore had probable cause to believe that appellant was driving while intoxicated in his view, and (2) the evidence showed that appellant's commission of this offense, if not stopped, posed an ongoing threat of violence or harm to appellant or others.[77]

---

71. Tex.Code Crim. Proc. art. 14.04

72. Tex.Code Crim. Proc. art. 14.01(a).

73. Tex.Code Crim. Proc. art. 18.16.

74. Tex.Code Crim. Proc. art. 14.04; *see* Dawson, at 224 (noting that this Court has applied art. 14.04 "to exclude evidence that officers obtained when making warrantless arrests in homes, places of business, or public places when the prosecution has been unable to show exigent circumstances preventing the officers from obtaining a warrant").

75. Tex.Code Crim. Proc. art. 14.03. *See Dyar v. State,* 125 S.W.3d 460, 470–71 (Tex.Crim.App.

2003) (Cochran, J., concurring) (arguing that Article 14.03 is a statutory codification of an "exigent circumstances" exception to the warrant requirement).

76. *Romo v. State,* 577 S.W.2d 251, 252–53 (Tex.Crim.App.1979).

77. *See Woods,* 152 Tex.Crim. at 341–42, 213 S.W.2d at 687–88; *see also McEathron v. State,* 163 Tex.Crim. 619, 620–21, 294 S.W.2d 822, 823–24 (1956) (upholding citizen's arrest when citizen saw defendant drive at a high rate of speed, drink from a bottle, strike the esplanade three times, and run red lights); *Turner v. State,* 901 S.W.2d 767, 770–71 (Tex.

In this case, the evidence shows that Mr. Moore clearly had probable cause to believe that appellant was driving while intoxicated on "something" when he left the scene of the accident. Mr. Moore was not alone in forming the opinion that appellant was intoxicated, and Mr. Moore was not alone in seeing that appellant left the scene at a high rate of speed. According to one witness, he ran a red light while leaving the scene. Such driving, especially while intoxicated, posed a danger to pedestrians and other drivers on the road. Indeed, appellant had already caused a three-car accident, so Mr. Moore's concern was well-founded. The evidence showed that there were numerous other cars traveling on Westheimer at this time of night. Mr. Moore testified that he pursued appellant "based on public safety" and because he thought "something needed to be done in an effort to stop him from harming anyone else or himself." Appellant's driving down Westheimer was "very dangerous." He "whipped" in and out of a parking lot at high speeds, almost sideswiped another car, and turned down West Alabama, a one-way-street, going the wrong way into oncoming traffic. Then he drove the wrong way into heavy traffic on Westheimer. Appellant's conduct indisputably posed a continuing danger to himself and others. This ongoing, potentially lethal conduct was, under any definition of the term, both a breach of the public peace and an offense against the public peace. Clearly, no one—neither citizen nor police officer—must obtain an arrest warrant before attempting to protect the public welfare from this type of reckless driving while intoxicated. These are precisely the type of exigent circumstances that the Texas Legislature envisioned when it explicitly authorized a citizen's arrest for an offense against the public peace.[78] Thus,

App.-Houston [14th Dist.] 1995, pet. ref'd) (relying on *Woods* and upholding citizen's arrest by private security officer for offense involving a breach of the peace when circumstances showed it was night, the apartment complex had previous incidents of criminal activity, defendant acted suspiciously, gave citizen a false name, and held up a handgun); *Crowley v. State*, 842 S.W.2d 701, 704 (Tex. App.-Houston [1st Dist.] 1992, no pet.) (relying on *Woods* and concluding that, under particular circumstances, failure to stop and give information after traffic accident was an offense involving a breach of the peace); *Estes v. State*, 660 S.W.2d 873, 874–75 (Tex. App.-Fort Worth 1983, pet. ref'd) (citing *Woods* and holding that, under the circumstances, obscene gesture constituted "fighting words" and was an offense constituting breach of the peace; defendant, a senior at Grand Prairie High School had extended "his middle finger of his right hand to Phillip M. Farris, principal of said school, during the commencement exercises on May 29, 1981"); *Ruiz v. State*, 907 S.W.2d 600, 603–04 (Tex. App.-Corpus Christi 1995, no pet.) (citing *Woods* and concluding that DWI defendant committed breach of peace when he drove wrong way down highway; "This type of conduct threatened danger and disaster to the community because appellant's act of driving in the wrong traffic lane placed his own life and the lives of other motorists in danger.").

78. Appellant argues that the phrase "offense against the public peace" in Article 14.01(a) is unconstitutionally vague and therefore a nullity. Appellant's Brief at 17–18. Appellant notes that the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application[.]" *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). But Article 14.01 is not a penal statute that defines a crime or requires or forbids certain conduct. This statute does not govern appellant's conduct; rather it permits the private citizen to intervene when he sees another person committing an offense that creates the immediate threat of harm or violence to the public peace. Appellant does not have standing to challenge the vagueness of a statute that affects the legality of Mr. Moore's conduct. Appellant has standing, rather, to challenge the *reasonableness* of Mr. Moore's conduct under either

Mr. Moore was legally authorized to make a citizen's arrest of appellant under Article 14.01(a).

**B. Mr. Moore Did Not Violate Appellant's Legitimate Privacy Rights While Making an Authorized Citizen's Arrest.**

■ Appellant claims that Mr. Moore violated a traffic law by following appellant down West Alabama, a one-way street, in the wrong direction and by driving "recklessly" in his attempt to stop appellant from driving recklessly while intoxicated. Appellant argues that, because Mr. Moore violated the same traffic laws that appellant was violating, his conduct was illegal and hence any evidence obtained as a result of Mr. Moore's emulation of appellant's driving was inadmissible under Article 38.23.

This is an argument that the United States Supreme Court recently rejected with regard to the pursuit of a reckless driver by police officers: "[W]e are loathe

to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger." [79] The Supreme Court pointed to the obvious perverse incentives of such a rule: a "fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles an hour, crosses the double-yellow line a few times, and runs a few red lights." [80] Instead, the Court adopted "a more sensible rule: A police officer's attempt to end a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even if it places the fleeing motorist at risk of serious injury or death." [81]

Appellant poses the issue as one involving a citizen's violation of "a traffic law" for purposes of Article 38.23,[82] but that misconceives the real issue. The issue is whether an officer or private citizen, engaged in an authorized pursuit of a fleeing suspect, may violate certain laws in order to follow or stop that suspect.[83]

the Fourth Amendment or Texas statutes. *See Parent v. State*, 621 S.W.2d 796, 797 (Tex. Crim.App.1981) ("when challenging the constitutionality of a statute, it is incumbent upon the defendant to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient"); *see generally, Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Appellant's argument is akin to challenging the vagueness of the language of the Fourth Amendment or Article 38.23. These provisions may indeed be vague, but they do not proscribe or penalize the defendant's conduct; they regulate conduct by officers and citizens.

**79.** *Scott v. Harris*, —— U.S. ——, ——, 127 S.Ct. 1769, 1779, 167 L.Ed.2d 686 (2007).

**80.** *Id.*

**81.** *Id.*

**82.** There might be situations in which evidence was illegally obtained by a government

officer's or private citizen's violation of traffic laws for purposes of Article 38.23, but no such scenario is presented here.

**83.** One can imagine the absurdity of holding that a fleeing suspect may violate any and all laws with impunity, but his pursuer's similar conduct is unlawful, rendering any subsequent arrest illegal and any evidence obtained as a result of that arrest inadmissible under Article 38.23. Burglars who are seen by a neighbor jumping out of the homeowner's window laden down with jewelry, money, and TVs could dash across a third person's lawn and then claim "King's X" if the pursuing neighbor trespassed upon the third person's property. A fleeing murderer could claim "King's X" if a neighbor who saw the shooting tackled the murderer-committing an assault upon him-in effecting a citizen's arrest. And so forth. Clearly this is not the intent of the Texas exclusionary statute. Nor would it constitute sound public policy.

Appellant admits that a police officer would have been justified in violating traffic laws had an officer been attempting to arrest appellant.[84] Thus, according to appellant, had Officer Obie been standing in Mr. Moore's shoes, he would have been authorized to follow appellant the wrong way down a one-way street. But following the original rationale and purpose of Article 727a outlined above, if a peace officer may search or seize the defendant under the particular circumstances, the evidence obtained by a private citizen who does so is not barred by the Texas exclusionary statute.[85]

Of course, there might be situations in which the conduct of the police officer or citizen in making an arrest is constitutionally unreasonable under the circumstances.[86] But in this case, Mr. Moore did not increase the risk to public safety and welfare by attempting to stop appellant in the manner that he did. Quite the contrary, the evidence shows that by following appellant down the one-way street with his overhead lights flashing, he warned the oncoming traffic of the danger appellant posed to other drivers.[87]

For purposes of Article 38.23(a), the issue is whether Mr. Moore was legally authorized to make a citizen's arrest under these particular circumstances, and whether he effectuated that arrest in a reasonable manner—a manner that a peace officer, standing in the citizen's shoes, could have legally done under the Fourth Amendment—and without significantly increasing the risk of danger and harm to the public welfare.[88]

84. Appellant's Brief at 14 (noting that the police "are procedurally excused from certain legal violations" during hot pursuit or because of exigent circumstances because "such conduct is by definition the peace officer's public duty"; "Section 9.21 of the Penal Code justifies a violation of law if the peace officer 'reasonably believes the conduct is required or authorized by law, by the judgment or order of a competent court or other governmental tribunal, or in the execution of legal process.' ").

85. *See, e.g., Chapin, Craft, Odenthal, Chavez, Gillett, Crowell, supra.*

86. *See Gillett v. State,* 588 S.W.2d at 370–71 (Roberts, J., dissenting) (arguing, "To give full effect to [Article 38.23], we must hold that it applies to evidence obtained through *unreasonable* searches or seizures that are made by officers or other persons alike") (emphasis added). For example, suppose the evidence showed that appellant had produced his insurance information, and the parties had peacefully exchanged all pertinent information. Suppose also that appellant had departed the accident scene in a careful manner and driven down Westheimer in obedience to all traffic laws. If a citizen suddenly decided that appellant was driving while intoxicated and decided to make a citizen's arrest by speeding up behind him, running red lights,

and going the wrong way on a one-way street and creating a danger to appellant and the public in the process, that conduct might be viewed as an unreasonable violation of appellant's privacy rights under the circumstances. *See Johnson, Jenschke, supra.*

87. The private citizen's conduct in these circumstances might well be viewed as one of "choice of evils" or necessity justification. Under Section 9.22 of the Texas Penal Code,

Conduct is justified if:
(1) the actor reasonably believed the conduct is necessary to avoid imminent harm;
(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Had Mr. Moore been ticketed for either speeding or reckless driving, he could have asserted this necessity justification for his conduct.

88. *Scott v. Harris,* 127 S.Ct. at 1778 ("In determining the reasonableness of the manner in which a seizure is effected, 'we must balance the nature and quality of the intrusion on the individual's Fourth Amendment

Granting the appropriate deference to the trial court's determination of historical facts, we conclude, as did the court of appeals, that "the trial court did not abuse its discretion in finding that Moore possessed probable cause to arrest appellant for DWI ... [and] that Moore's traffic violations did not implicate Article 38.23." [89] We therefore affirm the judgment of the court of appeals.

PRICE, J., filed a concurring opinion in which JOHNSON, J., joined.

KELLER, P.J., concurs.

PRICE, J., filed a concurring opinion in which JOHNSON, J., joined.

I join the judgment of the Court, but do not join its opinion. I cannot endorse the majority's new rule—"that a private person may do what a police officer standing in his shoes can legitimately do, but may not do what a police officer cannot do[.]" [1] It does not derive from the plain language of the statute, which makes inadmissible any "evidence obtained by an officer *or other person* in violation of *any provisions of* the ... laws of the State of Texas[.]" [2] And while it may indeed "explain the outcome" of some of our recent precedents,[3] in the sense that we would have reached the same result on the facts of those cases utilizing the new rule, it does not follow from the various rationales underlying our holdings in those cases. The majority says the new rule is "consistent with the purpose of article 38.23." [4] It seems to me, however, that the new rule may have the unfortunate effect of *encouraging* vigilantes, rather than discouraging them, as we all agree was one of the manifest purposes of statute.

I agree with the judgment of the Court because it is consistent with my own opinion of the proper scope of Article 38.23(a). I have elsewhere expressed the view that, notwithstanding the apparent plain language of the statute, in order to avoid an absurd result, we should construe it to limit the exclusion of evidence to that which is obtained in violation of law that directly impacts the personal property or privacy rights of the accused.[5] I believe we should impose this limitation regardless of whether the violation of law is committed by "an officer or other person." Applying this view to the facts of the instant case, I cannot see how the traffic violations that Joseph Moore may have committed in the course of pursuing the appellant impacted the appellant's personal property or privacy rights. On that basis, I would hold that any evidence "obtained by" those traffic violations need not be suppressed, and I would therefore affirm the judgment of the court of appeals.[6] But I cannot join

interests against the importance of the governmental interests alleged to justify the intrusion.' ... Thus, in judging whether [Officer] Scott's actions were reasonable, we must consider the risk of bodily harm that Scott's actions posed to respondent in light of the threat to the public that Scott was trying to eliminate.") (internal cite omitted).

89. *Miles*, 194 S.W.3d at 528–29.

1. Majority opinion, at 39.

2. Tex.Code Crim. Pro. art. 38.23(a) (emphasis added) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

3. Majority opinion, at 39.

4. *Id.*

5. *Chavez v. State*, 9 S.W.3d 817, 821–23 (Tex. Crim.App.2000) (Price, J., joined by Meyers, J., concurring).

6. I do not, however, endorse the court of appeals's rationale. The court of appeals held that the traffic violations did not invoke

the majority opinion because I am concerned about where its new rule may take us.

## PLAIN LANGUAGE

Since we decided *Boykin v. State*,[7] in 1991, we have attempted to construe Article 38.23(a) according to its plain terms.[8] Accordingly, we held in *State v. Johnson*,[9] that evidence obtained illegally by a person other than a peace officer is also subject to exclusion under the plain language of Article 38.23(a); or, as we phrased it later, "[e]vidence that a private person has obtained by committing [*e.g.,*] a burglary is not to be admitted against an accused on the trial of a criminal case."[10] It is this now-well-settled, plain-meaning construction of the statute that the appellant invokes.

There is, however, one aspect of Article 38.23(a) that is not necessarily governed by its plain language. As we recognized in *Fuller v. State*,[11] and reiterated in *Chavez v. State*,[12] long before we decided *Boykin*, the Court had engrafted a standing requirement upon the statute. We concluded in *Fuller*:

> the exclusionary remedy of Article 38.23(a) because the "law which is violated in obtaining evidence must exist for the purpose of regulating the acquisition of evidence to be used in a criminal case." *Miles v. State*, 194 S.W.3d 523, 528 (Tex.App.-Houston [1st] 2006). In my view this is too narrow a construction. Evidence obtained in violation of *any* provision of the law that directly affects the personal property or privacy interests of the accused should be subject to exclusion under the statute, regardless of whether that law "exists for the purpose of regulating the acquisition of evidence[.]"

7. 818 S.W.2d 782 (Tex.Crim.App.1991).

8. *See State v. Daugherty*, 931 S.W.2d 268, 270 (Tex.Crim.App.1996) ("In divining legislative intent, we look first to the language ·of the statute. When the meaning is plain, we look no further."); *State v. Johnson*, 939 S.W.2d

As in the past, we do not interpret the sweeping language of article 38.23(a) to confer automatic third party standing upon all persons accused of crimes, such that they may complain about the receipt of evidence which was obtained by violation of the rights of others, no matter how remote in interest from themselves. Although article 38.23 might be read in such a way, we are simply unwilling, by statutory interpretation, to work such a fundamental change in this State's elemental law of standing without a rather more explicit indication of legislative intent.[13]

Thus, we have long construed Article 38.23(a) to require that a criminal accused suffer a direct injury to his own rights before he can invoke its exclusionary remedy. As I pointed out in my concurring opinion in *Chavez*, echoing Presiding Judge Keller's concurrence in that same case, imposing such a standing requirement has the felicitous effect of avoiding certain potentially absurd consequences that might flow from an unfettered plain-language construction of the statute.[14]

586, 587 (Tex.Crim.App.1996) ("the plain language of a statute, not the legislative history behind it, dictates our interpretation of that statute.").

9. 939 S.W.2d at 588.

10. *Jenschke v. State*, 147 S.W.3d 398, 400 (Tex.Crim.App.2004).

11. 829 S.W.2d 191, 201–02 (Tex.Crim.App. 1992).

12. 9 S.W.3d 817, 819 (Tex.Crim.App.2000).

13. *Fuller v. State, supra*, at 202.

14. *Chavez v. State, supra*, at 823 (Price, J., joined by Meyers, J., concurring); *id.*, at 821 (Keller, P.J., joined by Keasler, J., concurring).

The requirement that an accused have standing to invoke Article 38.23(a) suffices to dispose of the issue in this case. Any traffic violations that Moore may have committed (reckless driving and/or driving the wrong way on a one-way street) in pursuing the appellant to effectuate a citizen's arrest in this case did not impinge upon any of the appellant's personal privacy or property rights.[15] Therefore, the appellant had no standing to challenge the admission of any evidence that may have derived from that pursuit and arrest. We could affirm the judgment of the court of appeals on that basis, without any further ado. There is no need to fashion a new rule.

## THE NEW RULE

The majority does not purport to glean its new rule either from the plain language of Article 38.23(a) or from case law heretofore construing the statute.[16] It adopts the new rule because it is at least consistent with *results* we have reached in our previous cases,[17] and because "the historical rationale for including unlawful conduct by an 'other person' under the Texas exclusionary statute is best explained and implemented by this rule."[18] Putting aside for a moment this questionable mode of statutory construction, one must ask whether the Court is accurate in its assessment that its new rule best implements the evident legislative purpose. In my view, this new rule may actually encourage vigilantes.

The majority frames the issue as "whether an officer or private citizen, engaged in an authorized pursuit of a fleeing suspect, may violate certain laws in order to follow or stop the suspect."[19] I agree that Article 14.01(a) of the Code of Criminal Procedure authorized Moore to effectuate a warrantless citizen's arrest of the appellant.[20] Therefore, the appellant cannot rely upon Article 38.23(a) to exclude evidence obtained by virtue of the warrantless citizen's arrest *per se*, even though Article 38.23(a) does apply to exclude evidence obtained by private citizens illegally. The question that remains is whether the evidence should be excluded under Article 38.23(a) because a private citizen has effectuated an authorized warrantless arrest in a manner that *otherwise* violates state or federal law.

The majority answers this question "no," at least as long as the private citizen's conduct in effectuating the authorized warrantless arrest would not be deemed "unreasonable" under the Fourth Amendment—that is, as long as it would not violate the Fourth Amendment were a police officer to perpetrate the otherwise-

---

**15.** I do not take issue with the majority's conclusion that Moore's citizen's arrest of the appellant was authorized by Article 14.01(a) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 14.01(a). Majority opinion, at 36–39. Thus, I do not believe the arrest itself illegally impinged upon the appellant's legitimate privacy interest in not being subjected to a seizure of his person.

**16.** There is no citation to *Boykin* in the Court's opinion, nor any attempt to square its new rule with the particular language of the statute. The Court cites to case law only to demonstrate that the results announced therein would be the same under its new rule—not

to provide a doctrinal basis in precedent for it. Majority opinion, at 36–39. None of those cases held, or even inquired whether, the conduct of the private person alleged to have triggered Article 38.23(a) would have been lawful had it been committed by a law enforcement officer.

**17.** Majority opinion, at 36–39.

**18.** *Id.* at 39.

**19.** *Id.* at 44.

**20.** *See* note 15, *ante.*

lawful arrest in the same manner.[21] But where does this new rule come from? Not from the face of Article 38.23(a) itself, obviously. And not from any previous case I am aware of that has construed the statute, although it may serve, in retrospect, to "explain" the results in certain of those cases as readily as whatever actual rationale we invoked in our opinions in those cases. Moreover, why would we answer the question only with reference to what is acceptable under the Fourth Amendment, when on its face Article 38.23(a) mandates the exclusion of evidence that is obtained in violation of "any" provision of "law," either state or federal?

As nearly as I can tell, the majority derives the new rule analogically from the recent opinion of the United States Supreme Court in *Scott v. Harris*.[22] There, the Supreme Court addressed the question whether a police officer could be sued in federal court for a civil rights violation under 42 U.S.C. § 1983, when, in the course of a high-speed chase, he rammed the suspect's car, forcing him into a wreck and rendering him a quadriplegic. The answer to this question turned, in part, upon whether the police officer's use of force under the particular circumstances was objectively reasonable for Fourth Amendment purposes. "[S]loshing [its] way through the factbound morass of 'reasonableness[,]' "[23] the Supreme Court ultimately concluded that, weighed in the balance between the danger to the suspect (considering that he had largely brought that danger upon himself) and the threat

that his reckless flight had posed to the public, the officer's conduct was reasonable. Therefore, the officer could not be sued.[24]

Borrowing from this holding, the majority now declares that henceforth, in Texas, a private citizen's conduct in effectuating an authorized warrantless arrest will not result in an exclusion of any evidence obtained thereby so long as his conduct is "reasonable" under the circumstances within the meaning of the Fourth Amendment, regardless of whatever other provisions of law, state or federal, he may violate along the way. Apparently, violations of federal statutory law, and of any Texas law whatsoever, will not result in the exclusion of evidence so long as the warrantless arrest is authorized under Chapter 14 of the Code of Criminal Procedure—never mind the plain language of Article 38.23(a) otherwise. In effect, the majority has rewritten the statute so that it should now be read:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case; except that, if an officer or other person effectuates a warrantless arrest that is authorized under Chapter 14 of this Code, evidence obtained upon that arrest may be admitted unless it is obtained in violation of the provisions of

21. *Id.* at 35–36 ("For purposes of article 38.23(a), the issue is whether Mr. Moore was legally authorized to make a citizen's arrest under these particular circumstances, and whether he effectuated the arrest in a reasonable manner—a manner that a peace officer, standing in the citizen's shoes, could have legally done under the fourth amendment—and without significantly increasing the risk of danger and harm to the public welfare.").

22. *Id.* at 44 & n. 79, *citing Scott v. Harris*, —— U.S. ——, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

23. *Scott v. Harris, supra,* at 1778.

24. *Id.* at 1778–79.

the Fourth Amendment to the Constitution of the United States of America. This is an impermissible judicial revision of the plain language of the statute.[25]

Boiled down to its essence, the majority's justification for this revision is relatively simple. Quoting Presiding Judge McCormick's *dissenting* opinion in *State v. Johnson*,[26] the majority argues that the "core" rationale for the *federal* exclusionary rule is to deter police misconduct.[27] This "core" purpose is less weighty when applied to the misconduct of private citizens.[28] Nevertheless, Article 38.23 also unquestionably reaches misconduct by private citizens as well, not just the police.[29] From these premises, the majority proceeds:

> Thus, the plain language and history of article 38.23 lead to an inescapable conclusion: if an officer violates a person's privacy rights by his illegal conduct making the fruits of his search or seizure inadmissible in a criminal proceeding under article 38.23, that same illegal conduct undertaken by an "other person" is also subject to the Texas exclusionary rule. If the police cannot search or seize, then neither can the private citizen. *Conversely, if an officer may search or seize someone under particular circumstances, then the private*

*citizen's equivalent conduct does not independently invoke the Texas exclusionary rule, and the evidence obtained by either the officer or the private person may be admissible.*[30]

Applied to the facts of this case, if the manner in which Moore effectuated the authorized warrantless arrest of the appellant would have been "reasonable" for Fourth Amendment purposes had a police officer used that same manner, then it does not matter whether he may have violated any other provision of law, state or federal; any evidence obtained by virtue of that violation will not invoke the remedy set out in Article 38.23(a).[31]

But the logic is flawed. Even assuming that the legislative intent was to prohibit any evidence-gathering conduct on the part of private citizens that would be prohibited to police officers, it does not necessarily follow that the legislature also intended to implement the converse proposition: that any evidence-gathering police conduct that we would regard as lawful under the circumstances we would also permit a private citizen to engage in. Simply stating the converse proposition does not establish that it is true. Ours is *not* the federal exclusionary rule; the core rationale of Article 38.23 is not *just* to deter police misconduct, but to deter

---

**25.** Article 38.23 already contains one express exception in the form of Subsection (b), a statutory good faith exception. "[E]stablished rules of statutory construction generally require that, where an express exception appears in a statute, the statute must apply in all cases not excepted." *Garcia v. State*, 829 S.W.2d 796, 800 (Tex.Crim.App.1992) (plurality opinion). *See also id.* at 798–99 ("As always, in the case of legislation, courts may interpret, but they may not amend. For this reason, while we are at liberty to impose exceptions upon court-made exclusionary rules, we may not create exceptions to statutory exclusionary rules. Unless a statute itself can fairly be read to include exceptions, no exceptions may be imported by judicial fiat.").

The majority suggests no absurdity inherent in the plain language of Article 38.23(a) that would necessitate the imposition of this otherwise-impermissible judicial gloss.

**26.** 939 S.W.2d at 590.

**27.** Majority opinion, at 35.

**28.** *Id.*

**29.** *Id.*

**30.** *Id.* at 36 (emphasis supplied).

**31.** *Id.* at 44–46.

any and all misconduct perpetrated in the name of gathering evidence.[32] Police officers and private citizens are not "equivalent" in the kinds of conduct they can lawfully engage in; there are some kinds of otherwise-unlawful behavior that a police officer may undertake in the lawful execution of his official duties that are simply not available to private citizens.[33] If it is objectively reasonable for a police officer to break the traffic laws in hot pursuit of a dangerous suspect, then should it always be deemed equivalently reasonable, and hence permissible, for a private citizen to do the same? [34] Did the Legislature really mean to encourage that? Does the Court?

**32.** This statement should be understood in light of our standing requirement, *i.e.*, that the misconduct must somehow impinge upon the accused's own privacy or property rights.

**33.** For example, Article 14.03(e) of the Code of Criminal Procedure expressly provides that the statutory justification of public duty, found in Section 9.21 of the Penal Code, applies to insulate the conduct of peace officers making certain warrantless arrests. *See* Tex.Code Crim. Proc. art. 14.03(e); Tex. Penal Code § 9.21. I doubt we would be inclined to construe Section 9.21 to similarly insulate the conduct of a private citizen who was speeding, ignoring traffic signals, and otherwise driving recklessly, all in the cause of apprehending a suspect, even if he was authorized by statute to make a citizen's arrest.

Moreover, Section 9.51 of the Penal Code sets up a legal justification for conduct that would otherwise be unlawful when the conduct is meant to facilitate law enforcement. Tex. Penal Code §§ 9.21(b) and 9.51. Section 9.51(a) justifies both peace officers, and civilians acting in the presence and at the direction of a peace officer, in using force against another under certain circumstances to effectuate an arrest or a search. Section 9.51(b) justifies a civilian, under even more limited circumstances, in using force against another to effectuate an arrest or search, even on his own. Section 9.51(c) justifies a peace officer in using *deadly* force against another under certain circumstances to effectuate an arrest (but not a search). Under Section 9.51(d), however, a civilian is justified in using *deadly force against another to effectuate an arrest (but not a search) under certain circumstances only in the presence of and at the direction of a peace officer.* None of these provisions affords a civilian the same latitude under the law to arrest and search as it does a peace officer, no matter how reasonable *it* might be under the particular circumstances to do so.

In any event, none of these provisions authorizes a civilian to place the lives of *innocent bystanders* in danger by, *e.g.*, speeding dangerously down the wrong way of a one-way public thoroughfare in pursuit of a suspect, even if the civilian was authorized under Chapter 14 of the Code of Criminal Procedure to make a warrantless arrest. When a suspect's own reckless behavior threatens the safety of bystanders, it will often appear reasonable under the Fourth Amendment to allow peace officers to likewise break the law in order to quell the danger. But do we really want to encourage a civilian to do the same, who may not enjoy the same immunity from prosecution as the peace officer under state law, and who presumably lacks the same level of training and experience that the peace officer will have in handling such situations, just because on balance it may be "reasonable" under the particular circumstances for Fourth Amendment purposes?

**34.** The majority attempts to temper its new rule by insisting that a citizen's arrest must not only be reasonable under the Fourth Amendment, but also that it should not "significantly increas[e] the risk of danger and harm to the public welfare." Majority opinion, at 45. It is apparently important on the facts of this case that Moore's tow truck had overhead flashing lights. Should Texas courts now have to "slosh [their] way through the factbound morass" of reasonableness *and* risk assessment in the process of determining what evidence obtained by private citizens in violation of state or federal law must be suppressed? I see no basis for this in the language or history of the statute.