**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00077-CR**
_____

**GARRETT WILLIAM NEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-09-10494-CR**

**MEMORANDUM OPINION**

A police pursuit of a person evading arrest or detention ended with a motor vehicle collision involving the pursuing patrol vehicle and a sport utility vehicle containing seven members of the Hilario family returning from a Father's Day celebration. Sergeant Stacey Baumgartner perished from injuries he sustained in the

collision.[1] Garrett William Nee appeals a judgment of conviction and fifteen-year sentence for evading arrest or detention with a motor vehicle resulting in death. In four issues, Nee complains the evidence is legally insufficient to support the jury's verdict finding him guilty, the trial court erred by allowing guilt-phase admission of evidence of Nee's intoxication at the time of the offense because the evidence concerned an uncharged extraneous offense, the trial court erred by allowing guilt-phase admission of retrograde extrapolation testimony that failed to consider how much food Nee consumed, and Nee suffered egregious harm from the omission of an article 38.23 jury charge instruction concerning Sergeant Baumgartner's violation of the Transportation Code during his pursuit of Nee. We affirm the trial court's judgment.

## Background

Sergeant Baumgartner responded to a call that a man was exposing himself to teenagers in a gas station parking lot. An observer directed the officer to Nee, who

---

[1] The Montgomery County grand jury presented four indictments that alleged Nee evaded arrest with a motor vehicle resulting in death or serious bodily injury. The indictments differed in that they alleged that Sergeant Baumgartner and Adan Hilario Jr. died as a direct result of the attempt by the officer to apprehend Nee while he was in flight and that Andrea Hilario and Joel Santos suffered serious bodily injury as a direct result of an attempt by the officer to apprehend Nee while he was in flight. The trial court vacated three of the judgments and proceeded to punishment on the case that is the subject of this appeal.

2

was sitting in his vehicle. Nee admitted he had been drinking alcohol. When the observer directed Sergeant Baumgartner to a spot in the parking lot where Nee urinated in public, Nee sped away in his vehicle. Sergeant Baumgartner returned to his patrol car and pursued Nee's vehicle in a high-speed chase. The patrol car's emergency overhead lights and siren were activated as the vehicles approached an intersection. Nee's vehicle proceeded through the intersection without incident, but the Hilario family's sport utility vehicle collided with Sergeant Baumgartner's patrol car. The crash rolled the patrol vehicle and pushed it into a concrete light pole, and children from the Hilario family's vehicle were ejected upon impact.

According to the State's accident reconstruction expert, Trooper Joseph Taska, data recovered from the patrol vehicle's computer system revealed the officer was travelling over sixty miles-per-hour twenty seconds before impact and fifty-five miles-per-hour just before impact. The recorded throttle reduced from 93.5% about two seconds before the accident to 5% on impact, which in Trooper Taska's opinion reflected that Sergeant Baumgartner applied the brakes before impact.

Nee's accident reconstruction witness, Cam Cope, testified that he used crash data retrieval to conclude that Sergeant Baumgartner's vehicle was travelling sixty-six miles-per-hour. According to Cope, Sergeant Baumgartner died as a result of the impact of his head on the passenger door. Cope offered his opinion that Sergeant

3

Baumgartner would have remained in his seat if he had been wearing his seat belt. According to Cope, the Hilario's vehicle would not have struck the patrol car if Sergeant Baumgartner had braked slightly before he entered the intersection.

Dr. Katheryn Pinneri, a forensic pathologist, testified that Sergeant Baumgartner suffered multiple injuries that could have independently caused his death. According to Dr. Pinneri, the transection of his aorta would have occurred even if the officer was wearing a seatbelt.

Department of Public Safety Trooper Christopher Lucchesi investigated the accident. He identified Nee as the person on the scene who identified himself as the person Sergeant Baumgartner had been chasing. Trooper Lucchesi read Nee his Miranda rights before questioning him. Nee explained that he had been out drinking because he had marital issues. Nee exhibited all six clues on the horizontal gaze nystagmus test. Nee refused to perform a field sobriety test and he was arrested for driving while intoxicated. Trooper Lucchesi then obtained a search warrant for a sample of Nee's blood. Trooper Lucchesi stated that the factors he identified in his initial crash report included Nee evading in a motor vehicle, Sergeant Baumgartner disregarding a red light, and Hilario failing to yield right of way to an emergency vehicle.

4

A toxicology chemist, Heidi Christensen, testified without objection that Nee's blood sample test results revealed a blood alcohol concentration of 0.161. Presented with a hypothetical situation in which a subject who claimed to have consumed only light beer provided a sample measuring .161 blood alcohol concentration at 10:00 p.m., Christensen replied that she would need additional information, including the subject's gender, weight and height, to determine the approximate number of drinks he had consumed. Provided a hypothetical 6'3" male weighing 230 pounds, Christensen stated the subject would have had to have approximately ten to eleven light beers in his system at the time of the blood draw. She added that for the subject to have been below .08 blood alcohol concentration at 7:30 p.m., at the time of the stop, he would have had to drink six to ten of those beers in the thirty minutes just prior to the stop. On cross-examination, Christensen stated that she was told that Nee ate a pork sandwich at lunchtime, and she opined that information would not impact her calculations.

## Sufficiency of the Evidence

Nee's first issue claims the evidence is legally insufficient to support his conviction for evading arrest or detention resulting in death to another. "A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." Tex.

Penal Code Ann. § 38.04(a). Evading arrest or detention is a felony of the second degree if "another suffers death as a direct result of an attempt by the officer or investigator from whom the actor is fleeing to apprehend the actor while the actor is in flight[.]" *Id.* § 38.04(b)(3)(A). Nee limits his challenge to the sufficiency of the evidence supporting the jury's finding of the facts that elevate the degree of the offense under section 38.04(b)(3)(A), and he does not challenge the sufficiency of the evidence supporting the elements of the offense under section 38.04(a).

When there is a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "[We] must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The jury is the sole judge of the witnesses' credibility and weight to be given to their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Juries may draw multiple reasonable inferences from

facts so long as each inference is supported by the evidence presented at trial. *Id*. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. Accordingly, we must defer to the jury's determinations of weight and credibility of the witnesses. *See Brooks*, 323 S.W.3d at 899.

Generally, in a sufficiency review, the appeals court is required to uphold the jury's verdict "unless a reasonable juror must have had a reasonable doubt as to at least one of the elements of the offense." *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012).

> [W]hen the evidence is deemed legally insufficient to support a person's conviction for a greater offense, but the analysis as to insufficiency raises the possibility that the record establishes the person is nevertheless guilty of some lesser-included offense, the appellate court should consider reforming the judgment to a lesser-included offense before rendering a judgment of acquittal.

*Lang v. State*, 561 S.W.3d 174, 184 (Tex. Crim. App. 2018).

Nee argues Sergeant Baumgartner's death occurred, not as a direct result of Sergeant Baumgartner's attempt to apprehend Nee while Nee was in flight, but because of what Nee argues is Sergeant Baumgartner's negligent and illegal act of not slowing down at the red light. Nee argues that, but for Sergeant Baumgartner not slowing or stopping at the intersection when he had the red light, the accident that

7

claimed his life would not have occurred. Nee contends Sergeant Baumgartner's death is the direct result of the officer's disregard of section 546.001 of the Texas Transportation Code, not as a direct result of Nee fleeing Sergeant Baumgartner. *See* Tex. Transp. Code Ann. § 546.001.

Generally, "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *See* Tex. Penal Code Ann. § 6.04(a).

> If concurrent causes are present, two possible conditions exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause *together* may be sufficient to have caused the harm.

*Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986).

Nee claims he cannot be held criminally responsible for an accident caused by Sergeant Baumgartner failing to enter the intersection safely. Even so, the issue is not whether the accident could have been avoided if Sergeant Baumgartner had slowed more before entering the intersection, but whether Sergeant Baumgartner died as a foreseeable consequence of his pursuit of Nee while Nee was in flight from lawful arrest or detention. Nee ignores the fact undisputed at trial, that at the time Sergeant Baumgartner entered the intersection, the officer was actively trying to

8

apprehend Nee, while Nee was fleeing to avoid arrest or detention. Section 38.04(b)(3)(A) describes the circumstances under which the act for which Nee is criminally responsible—intentionally fleeing from a person he knew to be a peace officer attempting lawfully to arrest or detain him—is elevated to a second-degree felony. *See* Tex. Penal Code Ann. § 38.04(a), (b)(3)(A). Nee was not convicted of causing the death of Sergeant Baumgartner; Instead, Nee was convicted of evading arrest or detention, and the grade of offense is greater because Sergeant Baumgartner died as a direct result of trying to lawfully arrest or detain Nee. The undisputed evidence at trial established that Sergeant Baumgartner was actively engaged in pursuing Nee when the collision between the patrol car and the Hilario vehicle occurred. The jury could rationally find that Nee intentionally fled from Sergeant Baumgartner, a person Nee knew was a peace officer attempting lawfully to arrest or detain Nee, and that Sergeant Baumgartner died as a direct result of his attempt to apprehend Nee while Nee was in flight. We conclude the evidence is legally sufficient to support the conviction. We overrule issue one.

### Evidence of Intoxication

Nee's second issue complains that the trial court erred in allowing unfairly prejudicial testimony of extraneous offenses during the guilt/innocence phase of the trial. *See generally* Tex. R. Evid. 403, 404(b). Nee admits that Trooper Lucchesi and

9

other witnesses testified without objection to Trooper Lucchesi's investigation of potential intoxication offenses and reckless driving by Nee. Nee failed to preserve the issue for appellate review. *See* Tex. R. App. P. 33.1(a). We overrule issue two.

## Retrograde Extrapolation Evidence

In his third issue, Nee claims the trial court erred by allowing Christensen to perform a retrograde extrapolation analysis without considering the quantity and type of food that Nee consumed. He argues Christensen "clearly did not take into account the quantity and type of food consumed by Appellant." Nee's argument is unsupported by the record, which shows that Christensen considered Nee's most recent meal and disregarded it because he had eaten it too long before his drinking to impact her analysis. And Christensen identified in her hypothetical several factors that were in the record, including Nee's sex, age, height and weight, as well as the blood test result showing his blood alcohol concentration of 0.161.

To preserve error for appellate review, "the point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). During trial, Nee objected that the witness had not been qualified as an expert on retrograde extrapolation. The trial objection to the witness's qualifications does not match the argument raised for the first time in this appeal, that the witness's testimony is unreliable because she failed to identify whether and

what any individual characteristics of the defendant were known to the expert. *See Mata v. State*, 46 S.W.3d 902, 916 (Tex. Crim. App. 2001). Nee failed to preserve the issue for appellate review. *See* Tex. R. App. P. 33.1(a). We overrule issue three.

## Illegally Obtained Evidence

In his fourth issue, Nee argues the trial court erred by failing to include an article 38.23 instruction in the jury charge when there was a factual dispute about whether the accident was proximately caused by Sergeant Baumgartner's illegal act of disregarding section 546.001 of the Texas Transportation Code and so all evidence of death resulted from a violation of law. *See* Tex. Code Crim. Proc. Ann. art. 38.23; *see also* Tex. Transp. Code Ann. § 546.001. Nee argues he suffered egregious harm because the jury could consider and convict him for a second-degree felony offense of evading arrest resulting in death instead of a third-degree felony offense of evading arrest in a motor vehicle. *See Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007) (applying egregious harm standard because the appellant never presented a proposed jury article 38.23 instruction).

Article 38.23 provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23(a).

"A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden*, 242 S.W.3d at 509–10. Article 38.23(a) does not apply to every violation of law. *Wilson v. State*, 311 S.W.3d 452, 459 (Tex. Crim. App. 2010). "Article 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime." *Id.*

In *Miles v. State*, the appellant argued article 38.23(a) required the suppression of evidence obtained by a tow truck driver who admitted to committing several traffic violations during a citizen's arrest. 241 S.W.3d 28, 42 (Tex. Crim. App. 2007). The Court of Criminal Appeals held that the exclusionary rule does not apply to traffic violations that do not infringe on the defendant's property or privacy rights. *Id.* at 44. The Court recognized that "there might be situations in which the conduct of the police officer or citizen in making an arrest is constitutionally unreasonable[.]"

12

*Id.* at 45. In Nee's case, however, it is undisputed that Nee evaded police pursuit in a high-speed chase. Furthermore, under article 38.23(a), evidence obtained in violation of the law "contemplates that a crime has been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the previously committed crime." *State v. Mayorga*, 901 S.W.2d 943, 945–46 (Tex. Crim. App. 1995). The evidence Nee argues should have been excluded did not exist at the time Sergeant Baumgartner entered the intersection. We conclude the trial court did not err by failing to charge the jury on article 38.23(a). We overrule issue four and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 3, 2019
Opinion Delivered November 13, 2019
Do Not Publish

Before Kreger, Horton and Johnson, JJ.