# NO. 12-24-00104-CR
## 12-24-00105-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS, APPELLANT* | § | *APPEAL FROM THE 278TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *CHRISTOPHER TYE COLEMAN, APPELLEE* | § | *MADISON COUNTY, TEXAS* |

## *OPINION*

The State of Texas appeals the trial court's pretrial order granting Appellee Christopher Tye Coleman's motion to suppress his statement and other evidence obtained during his interview with a special ranger employed by the Texas & Southwest Cattle Raisers Association (TSCRA). In three issues, the State contends the trial court erred by granting the motion to suppress. We affirm.[1]

## BACKGROUND

TSCRA hired Steven Jeter as a special ranger on April 1, 2022.[2] In May 2022, an attorney who represented "Doe," the father of the alleged victim, "Sam," contacted Jeter.[3] Doe's attorney told Jeter that Sam "was having some issues with [Appellee] and ultimately made an outcry" regarding Appellee and two other males. At the suppression hearing, Jeter testified that Doe found

---

[1] This case was transferred to this Court from the Tenth Court of Appeals in Waco, Texas, pursuant to a docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001(a) (West Supp. 2024).

[2] TSCRA's Special Ranger Training Manual states that TSCRA is a "not-for-profit trade association."

[3] We refer to the alleged victim and his father with pseudonyms. *See* TEX. CONST. art. I, § 30(a)(1) (granting crime victims "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

a dating app on Sam's cell phone, and when Doe questioned Sam about it, he believed Sam and Appellee were having a sexual relationship. Jeter informed the sheriff of the outcry, but neither the sheriff nor the district attorney's office deputized him. According to Jeter, the outcry involved "[l]ife and property" because Doe "thought people were coming on his property" and believed his son and other members of his family "were in harm's way." Jeter was a certified peace officer exclusively employed by TSCRA as a special ranger at the time of the events involved in this appeal.

On June 21, 2022, Jeter went to Appellee's residence dressed in what he described as "Texas peace officer" attire, including blue jeans, boots, a dress shirt, his TSCRA special ranger badge, and a gun. Jeter explained that his special ranger badge resembles a Texas Ranger badge, but a steer appears on the special ranger badge. Jeter agreed that he appeared to be a law enforcement officer. Before knocking on the door of Appellee's residence, Jeter activated an audio recorder. Jeter's recording of the ensuing encounter indicates that when Appellee answered the door, Jeter asked if he could come inside, and Appellee responded affirmatively. When Jeter asked Appellee whether he "had time to visit," Appellee again responded affirmatively. At the beginning of his encounter with Appellee, Jeter said, "I've been working this county for a long time, . . . "I've worked for the Texas Rangers, I've worked for the sheriff's department, and now I work for the cattle rangers. . . . So, anyway, I've been in law enforcement a few days." Jeter did not inform Appellee that he was recording their conversation.

The recording reflects that near the beginning of the encounter, Jeter asked Appellee, "do you think you know why I'm here?" Appellee responded, "I believe so, yes, sir." Jeter asked Appellee, "why do you think I'm here?" Appellee responded, "from Mr. [Doe]." Jeter answered, "Yeah." Jeter then questioned Appellee for approximately forty-five minutes, during which Appellee made inculpatory statements regarding sending photographs to Sam (then sixteen years old) that exposed Appellee's sexual organ. Appellee also made inculpatory statements regarding receiving photographs from Sam in which Sam's sexual organ was exposed. Jeter described Appellee as polite and cordial and explained that Appellee "talked freely." Jeter instructed Appellee to turn over his cell phone and its passcode, which Appellee did. Approximately twenty-one minutes into the interrogation, after Appellee's inculpatory statements, Appellee commented that Doe told him he intended to call the Texas Rangers. At that point, Jeter stated, "I am not with the Texas Rangers anymore. I am retired from the Texas Rangers, but I work for the cattle rangers.

2

I'm still a police officer. . . . Just so you don't get . . . confused." Jeter examined Appellee's phone while questioning him but did not find any nude photographs or child pornography.

Jeter acknowledged not telling Appellee anything concerning the limitations of his authority. He explained that although he uses consent forms on a regular basis, he did not use one when interviewing Appellee and examining Appellee's cell phone, nor did he inform Appellee that he was not required to provide his cell phone. When asked whether he told Appellee he was "a Texas Ranger[,]" Jeter testified, "No, I did not." Jeter explained that he told Appellee he was "a retired ranger" and that he "worked for the Cattle Association." When asked about his duties as a cattle ranger, Jeter testified, "Primarily agricultural related, the full authority to do what an everyday police officer would do under the agricultural laws. What makes this unique was that under the life and property [provision], [Doe] felt his family and property [were] in harm's way, and we believe that gave me a nexus in to initiate an investigation." Jeter stated that he talked to a DPS trooper who was in contact with the Texas Ranger assigned to the area, but the area's Texas Ranger "was going to be out of pocket for another week." Jeter did not arrest Appellee, but he provided the audio recording and Appellee's cell phone to the sheriff's office, and the sheriff's office obtained search warrants and ultimately arrested Appellee.[4]

On March 30, 2023, Appellee was charged by separate indictments with possession of child pornography and possession of lewd material. Appellee filed a motion to suppress, in which he asserted that the State's only evidence consisted of his statements "made to someone purporting to be a peace officer with investigative purview over such offenses." Appellee argued that Jeter "used his status as a law enforcement officer of sorts" to induce him to answer Jeter's questions and to provide his cell phone. According to Appellee, Jeter's authority as a special ranger with the TSCRA is "narrowly defined and limited to investigating the theft of livestock[.]" Appellee asserted that Jeter "obtained the evidence under the . . . false pretense that he had authority to conduct a child pornography investigation when he lacked any such authority" and violated various penal statutes in obtaining the evidence. Appellee also filed with the trial court a brief on the authority of special rangers, in which he argued that regardless of whether his statement was voluntary, the trial court should first determine whether Jeter "lied to get the statement and [Appellee]'s cellular telephone and whether that lie violated Texas penal law." In reply, the State

---

[4] Jeter also interviewed Sam. Jeter's interview of Sam is not at issue in this appeal, and we therefore do not address it.

argued that Jeter "clearly acted within the authority granted him in Texas Government Code [Section] 411.023 and further refined by Article 2.125 of the Texas Code of Criminal Procedure." The State further argued that Appellee lacked standing to challenge Jeter's investigation or collection of evidence. The State attached the TSCRA Special Ranger Training Manual as an exhibit to its reply.

During the suppression hearing, the trial judge commented, "it's a noncustodial statement, so I'm not even worried about *Miranda* warnings. It's a voluntary statement he made to this man. But, you know, this boy didn't know whether [Jeter] was a Texas Ranger, law enforcement officer, or what he was[.]" Toward the end of the hearing, the trial judge stated, "the question is, does [Jeter] have a right based on that Code of Criminal Procedure[] section, which is going to overrule anything in the [G]overnment C]ode because that's what's going to control here, to go in here and get that statement in the first place. . . . I want to know about this authority issue. That's all I care about right now, because if he has the authority the statement comes in. If he doesn't have the authority, the statement stays out. It's as cut-and-dry as that to me."

The trial judge signed an order granting Appellee's motion to suppress, in which he made the following "ruling and findings," in pertinent part: (1) the issue before the court was whether a TSCRA Special Ranger "had the authority and jurisdiction to investigate a child pornography allegation and collect evidence which included a taped statement from Defendant[;]" (2) both parties rely upon Article 2.125 of the Texas Code of Criminal Procedure and Section 411.023 of the Texas Government Code; (3) Appellee's statement to Jeter "was voluntarily made without coercion or promise of benefit[;]" (4) Article 2.125, Section 411.023, and the TSCRA handbook "contain restrictions and establish policies for Special Rangers[;]" (5) the TSCRA handbook requires a special ranger to identify himself as such; (6) Section 411.023 of the Texas Government Code gives special rangers authority to "'protect life' but gives no guidance as to what that authority confers[;]" (7) Article 2.125 of the Code of Criminal Procedure limits a special ranger's authority to make arrests except to prevent or abate an offense involving "livestock or related property[;]" (8) Jeter was not assisting any other law enforcement entity; (9) Appellee "believed Special Ranger Jeter had authority in that [Jeter] appeared at [Appellee]'s home in uniform and [Appellee] elected to cooperate[;]" (10) neither Article 2.125 or Section 411.023 refers to TSCRA special rangers as certified peace officers except with respect to livestock and property-related crimes; (11) TSCRA special rangers lack authority to arrest a person "for any offense other than

4

livestock or property crimes[;]" (12) Madison County law enforcement "has adequate resources" to investigate child pornography allegations; (13) the statutes give no guidance regarding the Legislature's intent in using the phrases "protect life" or "protect life and property[;]" (14) Article 2.125 of the Code of Criminal Procedure specifically allows the director of TSCRA to promulgate rules with which special rangers are expected to comply; and (15) Article 2.125, Section 411.023, and the TSCRA policy manuals restrict TSCRA special rangers "to the investigation of property and livestock issues." The trial court's findings and rulings indicate that the court ultimately determined that because Jeter acted outside the investigative authority given to him by Article 2.125 and Section 411.023, the evidence Jeter obtained must be suppressed under Article 38.23. This appeal followed.

## STANDING

In issue one, the State argues that Appellee lacks standing to challenge Jeter's authority to investigate. In issue two, the State argues that the trial court abused its discretion by granting the motion to suppress because Jeter did not violate Appellee's rights in obtaining the evidence. In response, Appellee maintains that he has standing because Jeter violated one or more penal statutes in obtaining the evidence. Because issues one and two both pertain to standing and are therefore interrelated, we address them together.

### Standards of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We generally review a trial court's decision to grant or deny a motion to suppress under an abuse of discretion standard. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witnesses' credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's

testimony.  *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  However, a trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004).  Thus, a trial court's failure to correctly analyze or apply the law constitutes an abuse of discretion.  *Id*.

When the trial court makes findings of fact, a reviewing court determines whether the evidence, viewed in the light most favorable to the court's ruling, supports those findings.  *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).  Unless the trial court's explicit fact findings that are supported by the record are also dispositive of its legal ruling, we review the trial court's legal ruling de novo.  *Id*.; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). "Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing *de novo*." *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004) (footnote omitted).

**Applicable Law**

Texas's exclusionary rule states as follows, in pertinent part: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."  TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2018).  Article 38.23 is coextensive with the common law exclusionary rule based on the Fourth Amendment to the U.S. Constitution; however, Article 38.23 provides broader protections than the Fourth Amendment because Article 38.23 excludes evidence obtained in violation of state laws and the state constitution, whether the evidence was obtained by an officer or other person. *Id.; Miles v. State*, 241 S.W.3d 28, 35 (Tex. Crim. App. 2007); *Pierce v. State* 32 S.W.3d 247, 251 n.7 (Tex. Crim. App. 2000); *see* 40 George E. Dix & Robert O. Dawson, CRIMINAL PRACTICE AND PROCEDURE §§ 7.7-7.10 (3d ed. 2011) (comparing federal exclusionary rule and Texas's statutory exclusionary rule and noting that Article 38.23 "imposes what is probably the broadest state law exclusionary requirement of any American jurisdiction.").  The phrase "laws of the State of Texas" in Article 38.23 is limited to legal requirements "promulgated by the Legislature[.]" *Pannell v. State*, 666 S.W.2d 96, 98 (Tex. Crim. App. 1984) (concluding that state bar rules, which are promulgated by Texas Supreme Court rather than legislatively enacted, do not have same force and effect as statutes).

The underlying purposes of Article 38.23(a) are to (1) protect a suspect's privacy, property, and liberty rights against overzealous law enforcement and (2) deter unlawful actions in acquiring evidence for the prosecution. *Miles*, 241 S.W.3d at 31; *Koury v. State*, 684 S.W.3d 537, 543 (Tex. App.—Austin 2024, pet. ref'd). In other words, Article 38.23 is intended to deter law enforcement activities that the officers committing the conduct could not reasonably have believed to be lawful. *State v. Purdy*, 244 S.W.3d 591, 595 (Tex. App.—Dallas 2008, pet. ref'd). However, "Article 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime." *Wilson v. State*, 311 S.W.3d 452, 459 (Tex. Crim. App. 2010). By concluding that the evidence should be suppressed, the trial court impliedly found both that (1) Appellee has standing and (2) Jeter violated a law intended to prevent illegal procurement of evidence of a crime or to protect Appellee's privacy, property, and liberty rights. *See Wilson*, 311 S.W.3d at 459; *Miles*, 241 S.W.3d at 31, 35; *Koury*, 684 S.W.3d at 543; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

**Analysis**

As mentioned above, the State contends that Appellee lacks standing to challenge Jeter's authority to investigate because he failed to demonstrate that Jeter violated his rights. The State further argues that Jeter did not violate Appellee's rights because consensual encounters between citizens and police do not implicate Fourth Amendment protections. In response, Appellee argues that he has standing to challenge Jeter's authority to investigate because, among other things, Jeter violated the Texas Penal Code by impersonating a public servant.[5]

A person commits the offense of impersonating a public servant if the person: "(1) impersonates a public servant with intent to induce another to submit to the person's pretended official authority or to rely on the person's pretended official acts; or (2) knowingly purports to exercise, without legal authority, any function of a public servant or of a public office[.]" TEX. PENAL CODE ANN. § 37.11(a) (West Supp. 2024). "As written, Section 37.11(a)(1) breaks down into two components[:] a culpable act component (*actus reus*) and a culpable mental state component (*mens rea*). It is essentially a nature-of-conduct offense with an accompanying specific intent." *Cornwell v. State*, 471 S.W.3d 458, 464 (Tex. Crim. App. 2015). In other words, a violation of Section 37.11(a)(1) entails both conduct (i.e. impersonation) and specific intent to

---

[5] The State did not file a reply brief addressing Appellee's contentions regarding Jeter's alleged violations of penal statutes.

7

induce another to submit or to rely. *Id*. Section 37.11 of the Texas Penal Code is intended to maintain the public's trust in law enforcement and government. *Dietz v. State*, 62 S.W.3d 335, 340 (Tex. App.—Austin 2001, pet. ref'd). "Every time someone falsely assumes governmental authority, he implicates the purpose of such statutes." *Id*. Moreover, Section 37.11 is intended to protect members of the public from the risk of submitting to the pretended authority of an individual impersonating an agent of a governmental unit. *Rice v. State*, 195 S.W.3d 876, 881 (Tex. App.—Dallas 2006, pet. ref'd).

The trial court found that Appellee's statement was voluntary and made without coercion or promise of benefit. We have no quarrel with the State's general proposition that consensual encounters between citizens and police do not implicate Fourth Amendment protections. *See State v. Woodard*, 341 S.W.3d 404, 411-12 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 49. However, our inquiry does not end there because (1) Appellee based his motion to suppress on the broader protections provided by Article 38.23 rather than the Fourth Amendment; (2) the trial court found that Appellee obviously believed Jeter had authority because Jeter appeared at his home in uniform and Appellee elected to cooperate; and (3) Jeter was a cattle ranger employed solely by TSCRA, not a police officer.

At the suppression hearing, the trial court heard testimony that (1) Jeter was employed solely as a TSCRA cattle ranger when he interviewed Appellee; (2) no law enforcement officer or agency deputized Jeter; (3) when Jeter went to Appellee's residence, he wore blue jeans, boots, a dress shirt, a gun, and his TSCRA special ranger badge; (4) Jeter agreed that he appeared to be a law enforcement officer; (5) although Jeter told Appellee that he was a cattle ranger, he also told Appellee that he was "still a police officer" and described his law enforcement background; (6) Jeter asked Appellee if he knew why Jeter came to his home; and (7) when Appellee stated that he believed Jeter was at his home because of Doe's allegations regarding Sam, Jeter responded affirmatively. In addition, the audio recording indicated that although Jeter told Appellee that he was a cattle ranger at the beginning of their encounter, Jeter also discussed his law enforcement background with the Texas Rangers and the sheriff's department and told Appellee that he had "been in law enforcement a few days." Furthermore, the recording reflects that after Appellee's inculpatory statements, Jeter again told Appellee that he worked for the cattle rangers and clarified that he was retired from the Texas Rangers, but Jeter also stated, "I'm still a police officer."

Based upon the foregoing evidence, giving almost total deference to the trial court's determination of historical facts and reviewing the trial court's findings of fact in the light most favorable to its ruling, we conclude that the trial court could reasonably impliedly determine that Jeter impersonated a public servant with the intent to induce Appellee to submit to his pretended official authority. *See* TEX. PENAL CODE ANN. § 37.11(a); *Abney*, 394 S.W.3d at 548; *Neal*, 256 S.W.3d at 281. In addition, reviewing the trial court's implied legal determination regarding standing de novo, we hold that because the trial court could reasonably conclude that Jeter violated Section 37.11(a), which is intended to protect the public from the risk of submitting to the pretended authority of an individual impersonating an agent of a governmental unit (and, implicitly, the improper acquisition of evidence for the prosecution by such a person), the trial court correctly impliedly found that Appellee has standing to challenge Jeter's authority to investigate. *See* TEX. PENAL CODE ANN. § 37.11(a); *Abney*, 394 S.W.3d at 548; *Wilson*, 311 S.W.3d at 459; *Neal*, 256 S.W.3d at 281; *Miles*, 241 S.W.3d at 31; *Rice*, 195 S.W.3d at 881; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23(a). For all these reasons, we overrule issues one and two.

## AUTHORITY OF TSCRA SPECIAL RANGERS

We now turn to issue three, in which the State argues that Jeter acted within the general authority to enforce laws designed to protect life and property pursuant to Section 411.023 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 411.023 (West 2019). In response, Appellee argues that Article 2.125 of the Texas Code of Criminal Procedure governs special rangers and expressly limits their authority to investigating theft of livestock or related property. *See* TEX. CODE CRIM. PROC. ANN. art. 2.125 (West Supp. 2024).

### Standard of Review and Applicable Law

Statutory construction is a question of law that we review de novo. *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015); *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). In construing a statute, courts give effect to the plain meaning of its language unless it is ambiguous or its plain meaning "would lead to absurd results that the legislature could not possibly have intended." *Liverman*, 470 S.W.3d at 836. Courts also employ rules of grammar and common usage, presume that the legislature used every word for a purpose, and give effect to each word, clause, and sentence if reasonably possible. *Id*. When two statutes deal with the same

subject or have the same general purpose, courts attempt to harmonize them with each other, giving effect to each statute and allowing them to stand together. *State v. Kahookele*, 640 S.W.3d 221, 225 (Tex. Crim. App. 2021). If two statutes that deal with the same subject matter or have the same purpose irreconcilably conflict, the more specific statute controls over the more general statute unless the legislature clearly intended the general statute to control. *Jones v. State*, 396 S.W.3d 558, 562 (Tex. Crim. App. 2013); *Merritt v. State*, 252 S.W.3d 757, 760 (Tex. App.—Texarkana 2008, no pet.) (citing *In re Dotson*, 76 S.W.3d 393, 395 (Tex. Crim. App. 2002)). "If, after using these tools of construction, the language of the statute is ambiguous, we can resort to extratextual factors to determine the statute's meaning." *Liverman*, 470 S.W.3d at 836. Ambiguity exists when reasonably well-informed persons may understand the statutory language in two or more different senses. *Id*. Extratextual factors include (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction, and (7) the title, preamble, and emergency provision. *Id*.

**Analysis**

DPS is a state agency tasked with enforcing laws protecting public safety and providing "for the prevention and detection of crime." TEX. GOV'T CODE ANN. § 411.002(a) (West Supp. 2024). DPS is composed of the Texas Rangers, the Texas Highway Patrol, the administrative division, and "other divisions that the commission considers necessary[,]" and the Public Safety Commission controls DPS. *Id*. §§ 411.002(a), 411.003(a) (West 2019). Section 411.023(a) of the Texas Government Code permits the commission to "appoint as special rangers honorably retired commissioned officers of the department and not more than 300 other persons." *Id*. § 411.023(a) (West 2019). Subsection 411.023(b) provides that "[a] special ranger is subject to the orders of the commission and the governor for special duty to the same extent as other law enforcement officers provided for by this chapter, except that *a special ranger may not enforce a law except one designed to protect life and property* and may not enforce a law regulating the use of a state highway by a motor vehicle." *Id*. § 411.023(b) (West 2019) (emphasis added). "A special ranger is not connected with a ranger company or uniformed unit of the department." *Id*.

Article 2.125 of the Texas Code of Criminal Procedure allows the director of DPS to appoint up to fifty special rangers, who are employed by TSCRA "to aid law enforcement agencies

10

*in the investigation of theft of livestock or related property*." TEX. CODE CRIM. PROC. ANN. art. 2.125(a) (West Supp. 2024). Under the statute, "a special ranger may make arrests and exercise all authority given peace officers under this code *when necessary to prevent or abate the commission of an offense involving livestock or related property*[,]" but special rangers are explicitly prohibited from issuing traffic citations. *Id*. art. 2.125(b), (c) (emphasis added). A person may not serve as a special ranger unless, among other things (1) the TSCRA submits the person's application for appointment and certification to both the director of the DPS and the executive director of the Texas Commission on Law Enforcement, (2) the director of DPS issues the person a "certificate of authority to act as a special ranger, and (3) the person "has met all standards for certification as a peace officer by the Texas Commission on Law Enforcement." *Id*. art. 2.15(e). However, "[a] special ranger is not entitled to state benefits normally provided by the state to a peace officer." *Id*. art. 2.125(d). Moreover, the statute explicitly provides that neither the state nor any political subdivision or state agency "shall be liable for any act or omission by a person appointed as a special ranger." *Id*. art. 2.125(g). Rather, the TSCRA "is liable for any act or omission by a person serving as a special ranger for the association that is within the person's scope of employment." *Id*.

As mentioned above, the crux of the State's argument is that Section 411.023 gives TSCRA special rangers broader authority than the authority granted to them in Article 2.125. We begin by considering the plain language of each statute. *See **Liverman***, 470 S.W.3d at 836. Section 411.023(b) provides as follows, in pertinent part: "A special ranger is subject to the orders of the commission and the governor *for special duty* to the same extent as other law enforcement officers provided for by this chapter, *except that a special ranger may not enforce a law except one designed to protect life and property. . . .*" TEX. GOV'T CODE ANN. § 411.023(b) (emphasis added). Giving effect to each word, phrase, clause, and sentence contained in Subsection 411.023(b), we note that the initial clause of Subsection (b) indicates that the subject of Subsection (b) is the ability of the commission and the governor to call special rangers for special duty. Accordingly, we construe the phrase that follows ("except that a special ranger may not enforce a law except one designed to protect life and property") to mean that when the governor or the commission calls special rangers for special duty, special rangers may enforce only laws designed to protect life and property. That is, the second clause of Subsection (b)'s first sentence does not grant special rangers

11

broad power to enforce laws "designed to protect life and property" unless they are called for special duty. *See **Liverman***, 470 S.W.3d at 836; *see also* TEX. GOV'T CODE ANN. § 411.023(b).

We will now construe Article 2.125 and compare it to Section 411.023(b). Article 2.125(a) allows the director of DPS to appoint up to fifty special rangers "who are employed by the [TSCRA] to aid law enforcement agencies *in the investigation of the theft of livestock or related property*." TEX. CODE CRIM. PROC. ANN. art. 2.125(a). In other words, Article 2.125(a) makes its application to special rangers of the TSCRA explicit and authorizes special rangers to aid law enforcement agencies with investigating theft of livestock or related property. Moreover, Article 2.125(b) reiterates that a special ranger may exercise all authority given to peace officers "*when necessary to prevent or abate the commission of an offense involving livestock or related property*." ***Id***. art. 2.125(b) (emphasis added). We further note that both Article 2.125(d) and Section 411.023(d) provide that a special ranger is not entitled to state benefits. ***Id***. art. 2.125(d); TEX. GOV'T CODE ANN. § 411.023(d). We conclude that Section 411.023 and Article 2.125 pertain to the same subject matter, i.e., the appointment of special rangers and their authority. *See **Merritt***, 252 S.W.3d at 760. However, Article 2.125 specifically applies to special rangers employed by TSCRA; more closely circumscribes their authority than does Section 411.023 by limiting their jurisdiction to investigating, preventing, or abating offenses involving livestock or related property; and expressly disclaims any liability of the State of Texas (or its agencies or political subdivisions) for any act or omission by them. *See* TEX. CODE CRIM. PROC. ANN. art. 2.125(a), (b), (g). As explained above, Section 411.023 and Article 2.125 may only be read in harmony with each other if Section 411.023 does not expand the specific authority Article 2.125 grants to special rangers until and unless such special rangers are called for special duty. *See **Kahookele***, 640 S.W.3d at 225. Moreover, if the statutes cannot be harmonized, we must conclude that Article 2.125 controls because it is the more specific of the two statutes. *See **Liverman***, 470 S.W.3d at 836; ***Merritt***, 252 S.W.3d at 760; ***Jones***, 396 S.W.3d at 562.

As previously explained, we conclude that Section 411.023 does not grant greater authority to special rangers than the authority given by Article 2.125. If any ambiguity remains as to the relationship between Article 2.125 and Section 411.023, the legislative history of Article 2.125 supports our construction.[6] *See **Liverman***, 470 S.W.3d at 836. The bill analysis of House Bill

---

[6] It is illustrative that TSCRA's Special Ranger Training Manual, which the State provided to the trial court, instructs its special rangers both that (1) Article 2.125 provides their "specific Law Enforcement/Investigation

12

1695, which the Legislature enacted as Article 2.125, discusses the history of the TSCRA; states that TSCRA was founded in 1877 "to combat the rise of cattle theft[;]" notes that TSCRA's field inspectors who investigated livestock theft and other ranch-related property losses eventually became special rangers and commissioned peace officers; acknowledges that Section 411.023 of the Texas Government Code governs special TSCRA rangers; and points out that DPS's rules "subsequently refined this statute, resulting in prohibiting special rangers from enforcing any law, except when necessary to protect the personal property of a special ranger." Bill Analysis, Tex. H.B. 1695, R.S. (2005). The author of the bill goes on to explain that "House Bill 1695 reinstates the original authority exercised by TSCRA field inspectors to conduct investigations into the theft of cattle and other ranch related property or livestock as requested by members, other law enforcement agencies[,] or the public." *Id*. The bill's author further states that the bill "gives special rangers all the authority given peace officers, including the power to arrest, *when necessary to prevent or abate the commission of an offense involving livestock or related property*." *Id*. (emphasis added).

The legislative history of Article 2.125 clearly demonstrates the legislature's intent to limit the purview of TSCRA special rangers to offenses involving livestock or related property and explains that the bill was intended to restore to TSCRA special rangers the powers they possessed under Section 411.023 before DPS's rules limited their authority. In other words, the legislative history shows the legislature's awareness that Section 411.023 governs TSCRA rangers and demonstrates its belief that the authorities of special rangers that it chose to specifically set forth in Article 2.125 were identical to those that special rangers possessed under Section 411.023 before DPS's rules further limited the authority of special rangers. *See id*. The legislative history of Article 2.125 supports the result obtained by applying rules of statutory construction.

After applying the rules of statutory construction to the language of Section 411.023 and Article 2.125, construing the relationship of said statutes to each other, harmonizing them, and determining that the legislative history of Article 2.125 supports our construction, we conclude the trial court did not err by concluding that Jeter lacked authority to investigate Appellee's alleged offenses because TSCRA special rangers are restricted to investigating offenses involving livestock or related property unless they are called for special duty. *See* TEX. CODE CRIM. PROC.

---

Authority[,]" and (2) "[f]urther general law enforcement authority in Texas is found in the Texas Government Code Sec. 411.023 . . . . This Section gives Special Rangers authority to enforce laws designed to protect life and property."

ANN. art. 2.125; TEX. GOV'T CODE ANN. § 411.023; *Kahookele*, 640 S.W.3d at 225; *Liverman*, 470 S.W.3d at 836; *Jones*, 396 S.W.3d at 562; *Merritt*, 252 S.W.3d at 760. Accordingly, we overrule issue three.

## DISPOSITION

Having overruled each of the State's issues, we ***affirm*** the trial court's order granting Appellee's motion to suppress.

**BRIAN HOYLE**
Justice

Opinion delivered October 31, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2024**

**NO. 12-24-00104-CR**

**THE STATE OF TEXAS,**
Appellant
V.
**CHRISTOPHER TYE COLEMAN,**
Appellee

Appeal from the 278th District Court

of Madison County, Texas (Tr.Ct.No. 23-14111)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**; and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 31, 2024

NO. 12-24-00105-CR

**THE STATE OF TEXAS,**
Appellant
V.
**CHRISTOPHER TYE COLEMAN,**
Appellee

Appeal from the 278th District Court

of Madison County, Texas (Tr.Ct.No. 23-14113)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**; and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*